**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

SHAWN MARTIN, individually,
and on behalf of all others similarly situated,

      Plaintiff,

                                     CLASS ACTION

v.                                       Case No._____

PARTSBASE INC. D/B/A GOVGISTICS
and GOVGISTICS INC.,

      Defendants.
_____.

## FLSA SECTION 216B COLLECTIVE ACTION AND CLASS ACTION  HYBRID COMPLAINT AND  DEMAND FOR JURY TRIAL

Plaintiff, SHAWN MARTIN, individually, and on behalf of all others similarly situated, who consent to their inclusion in this collective action, bring this lawsuit pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"), and a class action pursuant to Federal Rule of Civil Procedure 23, against PARTSBASE INC., d/b/a GOVGISTICS and GOVGISTICS INC. (collectively, "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* for failure to pay overtime compensation and a premium for all hours worked over forty (40) each week, failure to pay minimum wage, unjust enrichment, conversion, violations of the Florida Deceptive and Unfair Trade Practices Act, and breach of contract.

## INTRODUCTION

1.      The Fair Labor Standards Act is our nation's foremost wage law.  The overtime requirements of the FLSA were designed to eliminate "labor conditions detrimental to the

maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers..." 29 U.S.C. §202(a). To achieve its goals, the FLSA sets minimum wage and overtime pay requirements for covered employers. 29 U.S.C. §§206(a) and 207(a). It requires minimum wage and overtime pay for certain non-exempt employees. 29 U.S.C. § 213.

2.      The FLSA also requires that the payment of wages (minimum and overtime wages) are to be "free and clear," without conditions. *See* 29 CFR § 531.35 - "Free and clear" payment; "kickbacks."

3.      Plaintiff, Shawn Martin (hereinafter referred to as "Martin" or "Plaintiff") has worked for Defendants from on or about May 23, 2017 through the present from Defendants' corporate office in Boca Raton, Florida as an inside sales representative under the job title of "Sales Representative" and "Defense Analyst."

4.      Defendants have maintained a scheme to avoid their obligations to pay minimum wages and overtime wages to its inside sales representatives in order to save millions of dollars in labor costs and maximize profits all to the detriment of its employees.

5.      Put another way, Defendants, through misrepresentations, misleading statements, deception and misinformation to Plaintiff and all inside sales representatives, has subsidized the commissions owed to them for sales by engaging in deceptive, unfair, and unlawful wage practices in which the Defendants treat the hourly wages owed to inside sales representatives as a draw against commissions. Additionally, Defendants shave or edit overtime hours from the employees time records and also permit inside sales representatives to suffer to work off the clock.

6.     Plaintiff, like his fellow inside sales representatives, and who are members of this putative Class, worked at Defendants' corporate office in Boca Raton, Florida and were lead to believe they were being paid with a combination of a base hourly rate plus commission. Defendants classified Plaintiff and other inside sales representatives as non-exempt, hourly paid employees under the FLSA.

7.     Plaintiff, like his fellow inside sales representatives, in the past three (3) years preceding the filing of this complaint, and still to this day, were systematically denied any overtime pay for hours they worked in excess of forty (40) on behalf of Defendant.

8.     Plaintiff, like his fellow inside sales representatives, in the past three (3) years preceding the filing of this complaint, and still to this day, were systematically denied payment of minimum wages free and clear for each and every hour they worked as required by the FLSA and the Florida Minimum wage Act.

9.     Minimum wages, Pursuant to Department of Labor ("DOL") regulation, must be paid "free and clear" to satisfy the FLSA's minimum-wage requirements. 29 C.F.R. § 531.35. "Free and clear" is defined as "paid finally and unconditionally."

10.     Defendant maintained a common unlawful pay practice applicable to all inside sales representatives, shaving or editing off all work hours over forty (40) in each work week, and precluding the Plaintiff and all other inside sales representatives from being able to report and log in hours worked outside of the office.

11.     Defendants also maintained an unlawful policy requiring employees to log off at the end of the shift to avoid incurring overtime wages, while continuing to urge, stress and

encourage inside sales representatives, including the Plaintiff to continue to work off the clock in order to make sales to meet goals, quotas and metrics.

12.     Accordingly, Plaintiff, individually, and on behalf of all others similarly situated who consent to their inclusion in this collective action, sues Defendants for violations of the Fair Labor Standards Act for: (1) failing to pay the Plaintiff and others similarly situated overtime compensation; and (2) failing to maintain and preserve accurate and true records of all hours worked.

## FLSA CLASS DEFINITION AND RELIEF SOUGHT

13.     This collective action is to recover from Defendants overtime compensation, minimum wages, liquidated damages, prejudgment interest, and the costs and reasonable attorney's fees under 29 U.S.C. §216(b) on behalf of the Plaintiff and all similarly situated persons composed of:

> All persons employed by or performing work for PARTSBASE INC. or GOVGISTICS INC. as inside sales representatives, under the title of Defense Analyst, and any other job titles previously or currently used to describe persons working as sales representatives at any time within the three (3) years preceding this lawsuit to the day of trial.

## JURISDICTION AND VENUE

13.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, since this action involves a federal question under the Fair Labor Standards Act, 29 U.S.C., §§ 201-219, inclusive.

14.     This Court has personal jurisdiction over this action because the Defendants are engaged in business within the State of Florida.

15.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) since the acts complained of herein took place in this District, this is the home District where Defendants' corporate offices are located, and where the unlawful policies and practices complained of herein were created, carried out, and enforced.

16.     Upon information and belief, Defendants individually and jointly have revenues of $500,000 or more in the previous three (3) years and employ ten (10) or more employees.

17.     Plaintiff is engaged in interstate commerce, selling tangible goods across state lines, and having telephone and internet communications across state lines as well as processing orders and collecting payments and credit card charges across state lines.

18.     At all relevant times, Defendants have been, and continue to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

19.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**THE PARTIES**

.
20.     At all times relevant to this action, Representative Plaintiff Shawn Martin resided in Florida, and has worked as an inside sales representative for both Defendants, including working under the title of "Defense Analyst."

21.     Most, if not all, inside sales representatives work from Defendants' combined and joint corporate office located at 5401 Broken Sound Blvd NW, Boca Raton, FL 33487.

22.     Upon information and belief, all inside sales representatives perform work for both Defendants, although all inside sales representatives are solely paid by PARTSBASE INC.

23.     Defendant Partsbase Inc. is a foreign, for profit corporation with corporate offices located at 5401 Broken Sound Blvd NW, Boca Raton, FL 33487.  Defendant Partsbase Inc. may be served through its registered agent, ROBERT A. HAMMOND at the same corporate office.

24.     Defendant Govgistics Inc. is a Delaware Corporation, but is in fact doing business from the same corporate office as Defendant Partsbase Inc., and is acting as a single business enterprise with shared officers, offices, employees, business and services, and accounts as Defendant Partsbase Inc.

25.     Govgistics Inc., upon information and belief is the alter-ego of Richard A. Hammond, and/or other owners of Partsbase Inc.  Little if any information is filed with the State of Delaware, the state of incorporation, and clearly nothing is on file with the State of Florida as per SUNBIZ.ORG.

26.     Defendants are joint employers of Plaintiff and all inside sales representatives, as they both control and direct the work of inside sales representatives and operate as a single business enterprise.

27.     Alternatively, at all times material, Defendant Partsbase Inc. was doing business as Govgistics Inc. and Govgistics.

## GENERAL FACTUAL ALLEGATIONS

28.     Plaintiff's sales manager and Plaintiff himself hold themselves out to the public as employees and representatives of Govgistics Inc., using @govgistics emails, signatures and titles.

29.     At all times relevant to this action, Plaintiff worked for Defendants at their corporate office and performed work selling for both entities simultaneously and routinely throughout the term of his employment.

30.     When hired, Plaintiff was provided an offer letter which outlined his compensation as: "Your base compensation will be $700.00 per pay period, paid weekly, which is equivalent to $17.50 per hour based on a 40- hour work week. Maintaining this rate of pay will be predicated on performance. You will be classified as non-exempt from overtime and your work is not to exceed 40 hours unless pre-approved by management."

31.     As per Defendants' offer letter to Plaintiff, the base wage was intended to cover and pay for only forty (40) hours of work, and when he and other inside sales representatives worked less than forty (40) hours, the weekly wages were reduced accordingly.

32.     Plaintiff was also eligible for commissions as follows:  a) For signed sales up to $6000.00, the payout is 75%; b) For signed sales above $6,000.00, the payout is for the amount greater than $6,000.00 at 100%.

33.     However, Defendants instead treated Plaintiffs' earned hourly wages as a draw against the commission.

34.     Thus, each month, Defendants deducted Plaintiff's earned hourly wages from the sales commissions, and subsidized the commissions by using the wages already earned and paid to Plaintiff as drawn (a draw against earned commissions); meaning the Defendants treated Plaintiff's earned hourly wages as just a loan against future earned commissions.

35.     For purposes of the collective action, Plaintiff Martin, by this Complaint gives his written consent to be a party to this action pursuant to 29 U.S.C. § 216(b).

36. At all times relevant to this action, Defendants employed Plaintiff and all other inside sales representatives of this proposed FLSA collective action within the meaning of 29 U.S.C. § 203(g).

37. Plaintiff has not received his weekly wages free and clear, as Defendant takes the wages and treats them as a loan against future commissions (draw), and even deducting it from the earned commissions.

38. As FLSA regulations state:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. 29 CFR § 531.35.

39. When inside sales representatives have left the company upside down on the so-called draw, they have received an invoice and bill from the Defendants claiming these former employees owe the company the money back as well demanding payment of such.

40. When Plaintiff's commissions did not exceed the wages earned, or were less, a negative balance was carried over to the next month as a running draw amount, as to which had to be paid back to the Defendants.

41. Thus, for Plaintiff and all other inside sales representatives, the monies paid to them for their hourly wages, pursuant to the written and oral contracts, were never actually their earned wages free and clear.

42. Defendants treated the base hourly wages earned as a loan against future commissions.

43. Defendants also maintained a policy and practice for some period during the preceding three (3) years of shaving and editing overtime hours, or commanding inside sales representatives to shave or edit off overtime hours worked and thus, not paying overtime wages.

44. During the same time period, and through the present, Defendants maintained a policy of permitting inside sales representatives, including Plaintiff, to suffer to work off the clock and without being paid a premium for all hours worked over forty (40) in each and every work week.

45. Defendants threatened, warned and attempted to intimidate inside sales representatives from making claims for overtime by communicating to the inside sales representatives that such attempts would subject the employees to discipline.

46. Meanwhile, and simultaneously, Defendants pressured, coerced, suggested and intimitied inside sales representative to work off the clock "on their own dime" in order to meet sales goals, quotas and metrics, and under the threat of discipline and termination of employment for failing to meet these sales goals, quotas and metrics.

47. Defendants, by and through its managers, knew when the shifts of the inside sales representatives ended and when each person was working off the clock. Defendants acquiesced,

accepted, permitted and encouraged employees to work additional hours without being on the clock and without being paid for all hours, including a premium for overtime hours.

48.     Defendants maintained a culture and environment of fear, coercion and intimidation against inside sales representatives complaining about the manner in which they were and are compensated, and against questioning or complaining about not being paid properly under the law or the contractual agreement.

49.     Defendants' management discouraged Plaintiff and other inside sales representatives from complaining about or challenging the Defendants' pay practices and pay policies, again, with warnings of risk of harm to their positions in the company or future with the company.

50.     Upon information and belief, all inside sales representatives are paid under similar compensation and pay plans.

51.     Plaintiff and members of the Class were willfully denied overtime wages by Defendants as a whole or group under a De Facto policy against clocking, recording or claiming hours over forty (40) in any work week.

52.     Plaintiff and members of the class were willfully denied minimum wages and their base compensation free and clear as required by the FLSA and DOL regulations.

53.     The Defendants have willfully violated, and continue to violate § 206 of the FLSA by failing to pay minimum wages to Plaintiff and each and every inside sales representative over the preceding three (3) years to the present.

54.     The Defendants have willfully violated and continue to violate § 207 of the FLSA by failing to pay Plaintiff and others similarly situated overtime compensation for all hours worked in excess of forty (40) per week.

55.     Upon information and belief, for the three (3) year period before this filing, (the "Class Period"), the continued violations of FLSA § 206 and 207 that are complained of herein have been practiced and imposed upon all inside sales representatives..

56.     The FLSA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half (1.5) times their regular rate of pay for any hours over forty (40) worked in a week. 29 U.S.C. § 207(a)(1).  Although the FLSA provides for certain exemptions to the mandates of paying overtime compensation, no exemption applies in the instant matter, and Defendants have treated Plaintiff and all inside sales representatives as hourly, non-exempt employees during this relevant class period to the present.

57.     Moreover, pursuant to the FLSA and DOL regulations, Plaintiff and all inside sales representatives herein are entitled to be paid time and one half (1.5) their regular rates of pay, including the value of commissions earned, for all hours worked over forty (40) in each and every workweek.

58.     Unless proven to be exempt from the protection of overtime laws, all employees are entitled to premium overtime pay for work in excess of forty (40) hours per week.

59.     Plaintiff and members of the Class were, and continue to be, required to work more than forty (40) hours a week during the course of their employment with Defendants.

60.     Throughout Plaintiff's employment, he found it necessary to perform work outside of the office and from home, during evenings and on weekends, including reading and

sending emails, handling presentations, receiving or making telephone calls, and other research and without a means to record or report such work hours.

61.     It was against the best interests of commissioned sales representatives to ignore customers when outside of the office, or not to put in extra time in order to maximize sales and commissions.

62.     However, Defendants were aware that inside sales representatives were performing work outside of the office and off the clock, but permitted, endorsed, encouraged and knew about inside sales representatives doing so without being paid for all such work hours.

63.     Plaintiff herein alleges individually and on behalf of the members of the putative Class of similarly situated, that Defendants' failure to pay overtime and other minimum wages was and is a knowing and willful violation of the overtime wage requirements of the FLSA.

64.     Plaintiff herein alleges individually and on behalf of the members of the putative Class of similarly situated, that Defendants' maintained a scheme to evade and avoid their FLSA wage obligations.

65.     Accordingly, Plaintiff and the putative Class of similarly situated seek and are entitled to recover all overtime pay due from overtime hours worked for which compensation was not paid, an equal sum in liquidated damages, prejudgment interest, attorneys' fees and costs under the FLSA's three (3) year statute of limitations.

66.     Accordingly, Plaintiffs and the Class of similarly situated seek and are entitled to recover all minimum wages due for all hours worked for which compensation was not paid, an equal sum in liquidated damages, prejudgment interest, attorneys' fees and costs under the FLSA's three (3) year statute of limitations.

## FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED

67.  All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

68.  Evidence reflecting the precise number of overtime hours worked by Plaintiff and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

69.  However, and to the extent records are unavailable, Plaintiff and members of the Class may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

70.  With respect to an employee subject to the FLSA provisions, the following records must be kept:

    a.    Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age;

    b.    Hour and day when workweek begins;

    c.    Regular hourly pay rate for any week when overtime is worked;

    d.    Total hours worked each workday and each workweek;

    e.    Total daily or weekly straight-time earnings;

    f.    Total overtime pay for the workweek;

    g.    Deductions from or additions to wages;

    h.    Total wages paid each pay period; and

    i.    Date of payment and pay period covered

71.     Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist.  *See,* 29 U.S.C. § 215(a)(5); *See also,* Dunlop v. Gray-Goto, Inc., 528 F.2d 792 (10th Cir. 1976).

72.     Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the FLSA.  An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked.  *See,* Wirtz v. First State Abstract Ins. Co., 362 F.2d 83 (8th Cir. 1966); Boekemeier v. Fourth Universalist Soc'y, 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

73.     An employer's failure to maintain records may create a presumption in the aggrieved employee's favor.  *See,* Myers v. The Copper Cellar Corp., 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

74.     Defendants have failed to accurately record, track and report the Plaintiff's and Class of similarly situated members' time and work hours as required under the FLSA.

75.     Defendants have failed to make, keep and preserve records, with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR § 516.2 and 29 U.S.C. §§ 211, 216 and related laws.

**COLLECTIVE ACTION ALLEGATIONS**

76.     Plaintiff brings this action individually and on behalf of a proposed Class as a collective action pursuant to the Fair Labor Standards Act.  29 USC § 216(b).

77.     In <u>Young v. Cooper Cameron Corp.</u>, the court stated that: "The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action and thus no showing of numerosity, typicality, commonality and representativeness need be made." <u>Young v. Cooper Cameron Corp.</u>, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

78.     Still, despite the <u>Young</u> Court's ruling, the members of the Class are so numerous that joinder of all members is impracticable and in the interests of justice, as well as in keeping with the legislature's intent in creating Collective Actions under Section 216(b), proceeding as a collective action is proper in this case.  While the exact number of the members of the putative Class is unknown to the Plaintiff at this time and can only be ascertained through appropriate discovery, upon information and belief, Plaintiff believes that there are 200 or more individuals in the defined class within the three (3) year relevant class period.

79.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced and competent in class/collective actions and employment litigation.  Plaintiff has no interest that is contrary to, or in conflict with, members of the Class.

80.     A collective action suit, such as the instant one, is superior to other available means for a fair and efficient adjudication of this lawsuit.  The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

81.     A collective action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, the members of the Class

likely will not obtain redress of their injuries and Defendants will retain the proceeds from its violations of the FLSA.

82. Furthermore, even if any member of the Class could afford individual litigation against the Defendants, it would be unduly burdensome to the judicial system. The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide for judicial consistency.

83. Upon information and belief, all inside sales representatives were trained on an ad hoc basis, including Plaintiff, without any formalized and structured training program.

84. Plaintiff and all inside sales representatives were not put through any structured or instructor taught formal or classroom type corporate training program,.

85. There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole. The question of law and fact common to each of the Class predominate over any questions affecting solely individual members of the action. Among common questions of law and fact are:

     a.     Whether Defendants employed members of the Class within the meaning of the applicable provisions of the FLSA;

     b.     Whether Plaintiff and members of the Class were and/or are improperly not provided their base pay and wages, including minimum wages, free and clear as required by DOL regulations and the FLSA;

c.   Whether Plaintiff and members of the Class were expected, permitted, and encouraged to regularly work hours in excess of forty (40) per week off the clock and without being paid a premium for all hours worked;

d.   Whether Defendants unlawfully either edited or shaved overtime hours from inside sales employees time records, or required and instructed employees to shave, edit and remove overtime hours from their own weekly time records;

e.   Whether Defendants knowingly failed to maintain and preserve accurate and true records of all hours worked and wages earned by Plaintiff and the Class;

f.   Whether Plaintiff and the Class have sustained damages, and if so, what is the proper measure of such damages;

g.   Whether Defendants willfully and with reckless disregard, underpaid Plaintiff and the class of similarly situated, even when they did pay a premium for overtime hours worked;

h.   Whether Defendants maintained a De Facto, unlawful policy against paying overtime wages and against inside sales representatives from claiming or reporting all hours worked; and

i.   Whether Defendants permitted Plaintiff and all other similarly situated to suffer to work off the clock.

86.   Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance as a collective action.

## RULE 23 CLASS ACTION ALLEGATIONS

87.     Plaintiff brings the Third through Sixth causes of action for Unjust Enrichment, Conversion, Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), F.S.A. §§ 501.201-213, and Breach of Contract pursuant to Federal Rule of Civil Procedure 23 for Defendants' unlawful taking, converting and not providing base compensation as proposed and agreed free and clear to Plaintiff and all inside sales representatives on behalf of the class of Inside Sales Representatives, the members of whom have all been damaged by Defendants' herein described unlawful pay practices and conduct,

88.     The proposed class, that is referred to herein as the "Inside Sales Representatives Class," is defined as follows:

> **All persons employed by or performing work for PARTSBASE INC. or GOVGISTICS INC. as inside sales representatives, under the title of Defense Analyst, and any other job titles previously or currently used to describe persons working as sales representatives at any time within the 4 years preceding this lawsuit to the day of trial.**

89.     **NUMEROSITY**: The persons in this Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, upon information and belief, Defendants have employed approximately 200 or more Inside Sales Representatives considering the prior four (4) years with turnover, thus satisfying the numerosity requirement for the Class.

90.     **COMMONALITY**: Further, common questions of law and fact exist as to all members of the Class that predominate over any questions affecting individual members, including but not limited to:

a. Whether Defendants were unjustly enriched where Plaintiff and members of the class conferred sales services to Defendants with Defendants knowledge thereof, Defendants voluntarily accepted and retained these sales services, and whether it would be inequitable for Defendants to retain the benefit of these sales services without paying the benefit of such to Plaintiff and members of the class;

b. Whether Defendants converted the property of Plaintiff and members of the Class where they were and/or are improperly not provided their base pay and wages, including minimum wages, free and clear as required by DOL regulations and the FLSA, and unauthorized deductions were taken from their paychecks;

c. Whether Defendants violated the Florida Deceptive and Unfair Trade Practices Act by misleading or deceiving Plaintiff and members of the Class they would be paid a base compensation and commissions as per offer letters to them, and then taking the wages earned by the Plaintiff and the class of similarly situated, and treating these earned wages as a loan, or draw, after Plaintiff and the class of similarly situated commenced performing work and services for Defendants;

d. Whether Plaintiff and members of the Class and Defendants entered into an enforceable written contract, whether Defendants breached that contract, and whether Plaintiff and members of the Class suffered damages caused by Defendants' breach; and

e.     Whether Plaintiff and the Class have sustained damages, and if so, what is the proper measure of such damages;

91.     **TYPICALITY**: Plaintiff's claims are typical of those of the Class. Plaintiff Martin, like other class members, was subjected to Defendants' policy and practice of improperly paying all wages earned by employees in violation of Florida Law. Upon information and belief, Defendants have willfully underpaid Plaintiff and the putative class when their commissions failed to meet a threshold, and when they paid commissioned employees less than the equivalent of full minimum wage for all hours worked. The Defendants track hours worked, but edited or shaved off time and manipulated time records to eliminate employees' work hours and unlawfully deducted  Plaintiff and the Putative Class have similar violations alleged because both are based upon Defendants unlawful conduct of willful underpayment and non-payment of minimum wages and overtime wages, .

92.     **ADEQUACY**:  Plaintiff Martin will fairly and adequately represent and protect the interests of the putative members of the Class because he has no disabling conflict of interest that would be antagonistic to those of the other class members.  Plaintiff Martin has retained counsel who is competent and experienced in class and collective action wage and hour litigation.

93.     Class treatment is superior to alternative methods to adjudicate this dispute because Plaintiff Martin and the similarly situated Inside Sales Representatives suffered similar treatment and harm as a result of Defendants' unlawful and systematic pay policies and practices, and because absent a class action, Defendants' unlawful conduct will likely continue un-remedied and unabated given that the damages suffered by individual class members are

small compared to the expense and burden of individual litigation. Class certification is also superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' practices.

**COUNT I**
**VIOLATION OF SECTION § 207 OF THE FLSA**

94.    Paragraphs 1 through 86 are realleged and incorporated as if fully set forth herein.

95.    At all relevant times, Defendants employed Plaintiff, and/or each member of the Putative Class of similarly s

96.    ituated, and continues to employ members of the Putative Class, within the meaning of the FLSA.

97.    Upon information and belief, all Inside Sales representatives were paid under a common and similar compensation plan and scheme, comprised of a base hourly pay, in addition to being eligible for monthly commissions.

98.    Defendants have maintained a De Facto policy and practice of refusing to pay overtime compensation to inside sales representatives for the hours worked in excess of forty (40) hours per week.

99.    Defendants intimidate, coerce and dissuade insides sales representatives from reporting or claiming overtime hours and working on the clock over forty (40) hours in a work week for fear of scrutiny, discipline and management displeasure, meanwhile, suggesting, encouraging and even warning inside sales representatives to meet and exceed quotas, production goals, and metrics.

100.     Defendants' management is well aware of employees working off the clock at the office and outside of the office and working more than forty (40) hours in a work week, and does not discipline these employees for doing do.

101.     Defendants do not instruct, order or command employees to leave at the end of their shift time, nor do they prohibit employees from performing work activities they know insides sales representatives are engaging in on behalf of the Defendants while off the clock or away from the office.

102.     As a result, throughout the three (3) year class period to the present, Defendants have stolen potentially several millions of dollars or more in wages from inside sales representatives, while permitting them to suffer to work off the clock and by removing hours or instructing employees to remove overtime hours from the time records.

103.     Defendants knowingly and willfully failed to pay Plaintiff and all other members of the Class, overtime compensation at the appropriate legal rate for all hours they performed work on behalf of Defendants above and beyond forty (40) hours per workweek in violation of the FLSA, in particular 29 U.S.C. §§ 206 and 207.

104.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

105.     Defendants are well aware that in order to meet goals, quotas and/or metrics, and to complete and perform their job duties to the expectations of Defendants, inside sales representatives must work more than forty (40) hours in a workweek routinely, and especially when they are falling short of sales goals.

106.     Moreover, by the inherent nature of sales work, generally Defendants understand that the more hours inside sales representatives put in and work, the more likely they will produce more in sales revenue for Defendants and thus earn more commissions for the inside sales representatives.

107.     Defendants induced and mislead persons applying for and accepting the position of inside sales representatives into believing that they were going to both receive a base hourly pay, or salary for performing forty (40) hours of work per week workweek, free and clear and separate from the eligible commissions, and that they would be paid time and one half (1.5) their regular rates for all overtime hours worked.

108.     Instead, Defendants engaged in a scheme to avoid paying overtime wages, as well as in paying minimum wages for all hours worked.

109.     Defendants knew that the inside sales representative position would result in employees working more than forty (40) hours routinely in order to meet goals, quotas, sales requirements and other performance metrics.

110.     Defendants willfully failed and refused to pay Plaintiff and all other similarly situated inside sales representatives a premium for all overtime hours worked.

111.     Defendants willfully failed and refused to pay Plaintiff and all other similarly situated inside sales representatives a premium for all overtime hours worked at the correct and lawful rate, thus, underpaying Plaintiff and all inside sales representatives even when they did pay overtime wages.

112.     Upon information and belief, Defendants failed to include commissions earned in the determination of the regular rate and the overtime rate paid to all inside sales representatives,

and thus willfully and with reckless disregard for the FLSA and DOL regulations, underpaid Plaintiff and all inside sales representatives even when they did pay a premium for overtime wages.

113.     Defendants cannot and do not have a good faith basis under the FLSA for their willful actions and conduct of paying Plaintiff and all inside sales representatives less than the accurate, correct and lawful rates for overtime wages for all hours worked over 40 hours in each and every workweek.

114.     Plaintiff and the class of similarly situated thus are entitled to, and should be awarded liquidated damages of an equal sum of the overtime wages awarded or recovered for a period of three (3) years preceding the filing of this action to the present and continuing.

115.     Due to Defendants' willful FLSA violations, Plaintiff alleges on behalf of the members of the Class that they have suffered damages and are entitled to recover from Defendants the unpaid and underpaid overtime compensation due and owing for all hours worked in excess of forty (40) in each and every workweek, an additional equal amount as liquidated damages, prejudgment interest, reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

## COUNT II
## VIOLATION OF FLSA 29 U.S. Code § 206

116.     Plaintiff adopts and realleges paragraphs 1 through 86 as if fully set forth herein.

117.     Plaintiff and all inside sales representatives were promised in writing and orally by Defendants to be paid an hourly base rate for all hours worked each week.

118.    Defendants informed and promised Plaintiff and all inside sales representatives payment at their designated hourly rate for all hours work up through forty (40) in each work week.

119.    Plaintiff and all inside sales representatives are not paid and compensated free and clear for their work hours at the contractual rate promised and agreed upon.

120.    Defendants treat and classify the hourly earned wages of inside sales representatives as a draw against future commissions.

121.    A draw is simply a pay advance against expected earnings or commissions, meaning it is a loan by the company and thus is not free and clear earned wages and compensation.

122.    Thus, all inside sales representatives, including Plaintiff, have been willfully deprived of their wages, including minimum wages for all hours worked up through forty (40) in each and every workweek during the preceding three (3) years to the present and continuing.

123.    As a result of Defendants unlawful pay practice and scheme to avoid paying minimum wages free and clear, Plaintiff and the class of similarly situated have suffered substantial financial harm and are owed for each and every such hour worked in the preceding three (3) years, and continuing, payment at the Florida prevailing minimum wage rate, plus an equal sum in liquidated damages.

124.    A three (3) year statute of limitations must apply as a result of the willful, unlawful conduct and scheme of Defendants to avoid paying Plaintiff and all inside sales representative minimum wages.

## COUNT III
## UNJUST ENRICHMENT

125.     Plaintiff adopts and realleges paragraphs 1 through 93 as if fully set forth herein.

126.     Plaintiff and members of the putative class performed sales services on Defendants behalf and Defendants had knowledge those sales services were performed.

127.     Defendants voluntarily accepted and retained the sales generated from the efforts and labor of Plaintiff and members of the putative class.

128.     It would be inequitable for the Defendants to retain the benefits of the sales generated by Plaintiff and members of the putative class without paying Plaintiff and members of the putative class the value thereof for their efforts and labor.

129.     Defendants actions as set forth above in failing to pay Plaintiff and members of the putative Class wages due to them for time spent performing work for the benefit of Defendants and improper deductions from their pay constitutes Unjust Enrichment pursuant to Florida common law.

## COUNT IV
## CONVERSION

130.     Plaintiff adopts and realleges paragraphs 1 through 93 as if fully set forth herein.

131.     At all material times, Plaintiff and members of the putative class were and are entitled to property in the form of cash in an amount equal to the hours worked, a premium for overtime hours worked and commissions earned during their employment with Defendants.

132.     Defendants have intentionally acted to permanently or indefinitely deprive Plaintiff and members of the putative class of their property and are in possession of the wages and commissions belonging to Plaintiff and members of the putative class.

133.    Defendants, without the consent of Plaintiff and members of the putative class, have converted to their own use the above mentioned property.

134.    Defendants actions as set forth above in failing to pay Plaintiff and members of the putative Class wages due to them for time spent performing work for the benefit of Defendants, and improper deductions from their pay constitutes Conversion pursuant to Florida common law.

**COUNT V**
**VIOLATION OF FDUTPA F.S.A 501.201 ET SEQ.**

135.    Plaintiff adopts and realleges paragraphs 1 through 93 as if fully set forth herein.

136.    Plaintiff and the putative Class provided services to Defendants after accepting employment from Defendants in reliance upon oral and written promises to be paid a base hourly wage for all hours worked, in addition and separate from commissions earned.

137.    Plaintiff and the class of similarly situated relied upon Defendants oral and written promises in performing their job duties, to their detriment and suffering..

138.    Defendants are engaged in trade or commerce selling goods and services to entities and other third parties.

139.    Defendants deceived, and willfully mislead Plaintiff and the class of similarly situated by promising and leading all Insides Sales Representatives to believe they were being paid an hourly rate for all hours worked up to forty (40), and time and one half (1.5) for overtime hours worked over forty (40) in each and every workweek.

140.    Defendants instead, throughout the term of Plaintiff's employment to the present, have treated all base wages of Inside Sales Representatives as a loan or draw, and as monies that are not free and clear earned by Plaintiff and the class of similarly situated.

141.   Defendants promised to pay Plaintiff for each forty (40) week period, up to $700.00 based upon an hourly rate of $17.50 per hour, but when he worked less than 40 hours, his pay was reduced by the deficient hours.

142.   Defendants maintained a common pay practice applicable to all inside sales representatives, treating their base pay just like Plaintiff as a loan or draw, and took their earned wages and used these funds to subsidize or offset the commissions which would be owed to inside sales representatives.

143.   Plaintiff and all inside sales representatives have suffered damages in the form of all base pay due them at the hourly rates they were promised, throughout their employment to the present and continuing.

144.   The actions of Defendants of taking the wages earned by the Plaintiff and the class of similarly situated, and which were promised as per offer letters to them, and treating these earned wages as a loan, or draw, after Plaintiff and the class of similarly situated commenced performing work and services for Defendants, is a deceptive business practice.

145.   The actions of Defendants of taking the wages earned by the Plaintiff and members of the putative class, and which were promised as per offer letters to them, and treating these earned wages as a loan, or draw, after Plaintiff and the class of similarly situated commenced performing work and services for Defendants, is an unconscionable act or practice.

146.   Defendants actions as set forth above in failing to pay Plaintiff and members of the putative Class the hourly wages due to them pursuant to offer letters provided to them, and other promises to pay them for their work hours for time spent performing work for the benefit of Defendants is a violation of FDUTPA.

<u>COUNT VI</u>
<u>BREACH OF WRITTEN CONTRACT</u>

147.     Plaintiff adopts and realleges paragraphs 1 through 93 as if fully set forth herein.

148.     On or about May 11, 2017, the parties, for valuable consideration, entered into a valid and enforceable contract for the performance of sales services by Plaintiff Martin in return for a base compensation, the opportunity to earn overtime pay and commissions on sales.

149.     In breach of the contract, Defendants willfully and intentionally have not paid Plaintiff and members of the putative class overtime wages for hours he worked in excess of forty (40) in a workweek.

150.     In breach of the contract, Defendants have taken deductions out of Plaintiff's base pay, thereby reducing his base pay below what was bargained for.

151.     Plaintiff and all inside sales representatives have suffered damages in the form of all base pay due them at the hourly rates they were promised, throughout their employment to the present and continuing.

152.     Defendants drafted the contract.

153.     Upon information and belief, the putative class of Inside Sales Representatives entered into similar contracts as the one between Plaintiff Martin, the putative class relied upon the representations made by Defendants in the contract, and Defendants' breaches have harmed members of the class by denying them the pay that was bargained for between the parties.

**WHEREFORE** Plaintiff, SHAWN MARTIN prays for:

a.       An order designating this action as a collective action and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals across the nation with instructions to permit them to assert timely FLSA claims in this action

by filing individual Consents to Join this action as plaintiffs pursuant to §216(b); and that notice be sent to all past and present employees of PARTSBASE INC. D/B/A GOVGISTICS INC. and GOVGISTICS INC., any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice;

b. An order awarding attorneys' fees and costs pursuant to § 216 of the FLSA;

c. That the Court find Defendants in violation of the minimum wage and overtime compensation provisions of the FLSA and that the Court find that Defendants' violations of the FLSA were and are willful;

d. That the Court award Martin and the putative Class of all similarly situated employees overtime compensation for all the previous hours worked over forty (40) hours in each and every workweek at the rate of time and one half (1.5) their regular rate of pay during the past three (3) years, AND an equal sum in liquidated damages. In addition, interest on said award pursuant to § 216 of the FLSA;

e. That the Court award Martin and the putative Class of all similarly situated employees minimum wage compensation for all the previous hours worked at the minimum wage rate for the first forty (40) worked in each workweek during the past three (3) years, AND an equal sum in liquidated damages. In addition, interest on said award pursuant to § 216 of the FLSA;

f. That the Court award Martin a collective action class representative fee or service award fee for his efforts and time dedicated to bringing justice through this action;

g.     That the Court award Martin a class action class representative fee or service award fee for his efforts and time dedicated to bringing justice through this action;

h.     That the Court appoint Mitchell Feldman, Esq. and the firm of Feldman Legal Group as class counsel for both classes in the FLSA collective action and the Rule 23 class actions;

i.     That the Court rule Defendants violated the Florida common law doctrine of Unjust Enrichment and award Plaintiff Martin and members of the Class a judgment in damages;

j.     That the Court rule Defendants violated the Florida common law doctrine of Conversion and award Plaintiff Martin and members of the Class a judgment in damages;

k.     That the Court rule that Defendants violated FDUTPA and award Plaintiff Martin and members of the Class an award of actual damages, attorney's fees and costs pursuant to FDUTPA;

l.     That the Court rule Defendants are in breach of contract and award Plaintiff Martin and members of the Class a judgment in damages; and

m.     That the Court award any other legal and equitable relief as this Court may deem appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Dated the 18th day of February 2020.

Respectfully submitted.

/s/Mitchell Feldman, Esq.

**Mitchell L. Feldman, Esquire**
Florida Bar No.:  0080349
FELDMAN LEGAL GROUP
6940 W. Linebaugh Ave, #101
Tampa, Florida 33625
Tel: 813-639-9366 - Fax: 813-639-9376
Email: mlf@feldmanlegal.us
Secondary: lschindler@feldmanlegal.us
*Attorney for Plaintiff, and the class*
*Of similarly situated*