**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:20-cv-80235-DLB

SHAWN MARTIN and STEVEN LEVINSON,
 individually and on behalf of all others similarly situated,

     Plaintiff,

v.

PARTSBASE, INC. d/b/a GOVGISTICS, and
ROBERT HAMMOND

     Defendant.

_____/

**PARTSBASE AND ROBERT HAMMONDS' RESPONSE OPPOSING PLAINTIFFS'**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

PartsBase and Robert Hammond respond opposing Plaintiffs' October 6, 2020 Motion for

Temporary Restraining Order, Injunction, Issuance of Corrective Notice and for Sanctions

("MTRO") [DE 138] as follows:

**INTRODUCTION**

The MTRO is yet another example of Plaintiffs' reckless and vexatious approach to this

litigation based upon hyperbole and false assertions and must be denied.[1] The lone piece of

*evidence* offered in support of the MTRO is the perjured declaration of a former PartsBase

employee, Christopher Stocks. As demonstrated in this Response, Mr. Stocks provided perjured

---

1     Examples of Plaintiffs' counsels' hyperbole in the MTRO include baseless allegations regarding alleged – but utterly unsubstantiated – "egregious and appalling communications by PartsBase to Plaintiffs in this case sabotage and undermine the goals of FLSA…", (MTRO at p. 12); PartsBase's alleged "subterfuge and subversion constitute an intolerable affront to the authority of the court to police opt-in Plaintiff and collective class members' communications," (MTRO at p. 13), and, the greatest exaggeration to date "[t[his is the most grotesque example of a company retaliating in a FLSA collective action that probably any court has ever seen." MTRO at p. 16-17.

testimony and must be sanctioned accordingly. Similarly, based upon their repeated violations of 28 U.S.C. §1927 during this litigation, this Court should award PartsBase sanctions representing the fees incurred by PartsBase in having to respond to the MTRO and the "emergency" motion [DE 126]. Anything shy of sanctioning Plaintiffs' counsel will not deter them from continuing in bad faith to file vexatious motions with the Court, costing PartsBase substantial sums for the attorney's fees incurred in responding, and needlessly wasting this Court's judicial resources.

## I.    Mike Garcia and Jason Stocks Were Friends

The cornerstone of the MTRO is premised upon a social telephone call between Mike Garcia, a current PartsBase Sales Manager, and Christopher Stocks, a friend (perhaps now *former* friend), questioning whether Mr. Stocks fully understood the potential magnitude of what his involvement in this lawsuit could represent.[2] Mr. Stocks signed a declaration under penalty of perjury attesting to, among other things, the fact he and Mr. Garcia were not friends. MTRO Exhibit 1, ¶7. That attestation, along with many of the other attestations in the declaration, is a lie.

When Mr. Garcia learned Mr. Stocks had decided to opt in as a plaintiff and also learned that PartsBase was raising Counterclaims against the Plaintiffs and Opt-in Plaintiffs, he became concerned regarding whether Mr. Stocks – again, someone he considered a friend – fully appreciated the nature and scope of Plaintiffs' (and Stocks specifically) allegations in this case, because Mr. Garcia knows the allegations to be untrue. October 13, 2020 Declaration of Mike

---

2    Plaintiffs' counsel also cites to a PartsBase 30(b)(6) deposition by its President, Greg Schmidt, and mischaracterize to this Court Mr. Schmidt's reaction to Mr. Garcia's telephone call to Mr. Stocks. MTRO at p. 2, ¶7. Plaintiffs' counsel tells this Court Mr. Schmidt was amused by Mr. Garcia's call (MTRO at p. 2, ¶7) when, in fact, Mr. Schmidt was reacting to the fact Plaintiffs' counsel and Mr. Stocks were willing to contort a social call between friends into a false narrative regarding Mr. Garcia's intentions because Mr. Schmidt knew Mr. Garcia was friends with Mr. Stocks. September 11, 2020 Deposition of Greg Schmidt at p. 160, lines 2-3. Rest assured, Mr. Schmidt finds nothing about this lawsuit to be amusing.

Garcia, attached as **Exhibit "1"**, ¶7. Further, through his own work as a manager at PartsBase and having supervised Mr. Stocks, Mr. Garcia was well aware of the fact Mr. Stocks repeatedly signed written statements confirming that he had not worked any overtime, and also was repeatedly and willingly being videotaped stating he had not worked any overtime. *Id.* at ¶9. As such, Mr. Garcia was concerned that Mr. Stocks could get in trouble for perjuring himself in connection with this lawsuit.[3]

That Mr. Garcia and Mr. Stocks were friends cannot credibly be disputed and Mr. Stocks' assertion that he felt "intimidated" and "in fear of [his] physical and financial well-being" from talking to Mr. Garcia is also a lie. *See* MTRO [DE 139, Exh. 1, ¶ 6]. We know this because the day of the alleged "threatening" communication, ***Mr. Stocks texted Mr. Garcia after speaking on the phone,  stating "Lets get a beer someday."*** Mr. Garcia responded by inviting Mr. Stocks and Mr. Stock's *minor children* boating.  ***Mr. Stocks replied "… That sounds great.***" Exhibit "1" ¶12. Quite obviously, Mr. Stocks was in no fear whatsoever. Again, Mr. Stocks perjured himself in his declaration. To make matters even worse, attached hereto as Exhibit "1" ¶12 are multiple photographs of Messrs. Pinilla, and Just all attending a party at Mr. Garcia's home and on his boat. Mr. Garcia opened his boat, and his home, to Mr. Stocks and Mr. Stocks' family (who accepted those occasions), not because they were strangers – or even mere acquaintances, but because they were friends.

---

3      In addition to the call Mr. Garcia made to Mr. Stocks, he also called former PartsBase employees Ozzie Pinilla and Joseph Just to express the same concerns he expressed to Mr. Stocks. Exhibit "1", ¶7. Like Mr. Stocks, Mr. Garcia considers Messrs. Pinilla and Just to be his friends. Tellingly, Plaintiffs' counsel fails to offer declarations from Messrs. Pinilla and Just, perhaps because unlike Mr. Stocks, they were not willing to be coerced to lie in this instance.

Because PartsBase has established that the lone piece of *evidence* filed in support of its MTRO is a perjured declaration, this Court should summarily deny the MTRO and enter sanctions accordingly.

## II.     PartsBase Urges the Court to Conduct an Evidentiary Hearing

If the Court is not inclined to deny the relief sought in the MTRO based upon its reliance on perjured testimony, the Court should conduct an evidentiary hearing. In the MTRO, Plaintiffs have requested an evidentiary hearing. MTRO at p. 1.  If the Court finds an evidentiary hearing necessary, PartsBase does not oppose same, and also requests that the Court allow PartsBase leave to subpoena Messrs. Stocks, Pinilla, and Just so they can appear at the evidentiary hearing and give testimony.[4] While it is true that a court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, this is the case only if such evidence is "appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995), *quoting Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986). Here, the lone piece of evidence relied upon by Plaintiffs and their counsel to obtain injunctive relief is the perjured declaration of Mr. Stocks. This Court should have the opportunity to observe Mr. Stocks when he testifies and is cross-examined so the Court can evaluate his demeanor. Likewise, the Court should also hear testimony from Messrs. Pinilla and Just for the same reasons.

---

4     PartsBase does not believe Mr. Garcia's social calls to Messrs. Stocks, Pinilla and Just had any impact on their decision regarding whether to remain in the litigation. In Mr. Stock's case, it obviously did not. To date, he remains an Opt-in Plaintiff. An evidentiary hearing will allow this Court to understand what, if any, impact Mr. Garcia's calls had on these individuals.

### III.   Mr. Garcia was not Directed by PartsBase to call Messrs. Stocks, Pinilla or Just

Mr. Garcia does not dispute that he had a phone call with Mr. Stocks, but he did not place this call at the direction of anyone at PartsBase, let alone Robert Hammond, and the MTRO offers *no* evidence to the contrary. Exhibit 1, ¶8. Notwithstanding the complete absence of admissible evidence for their contention, Plaintiffs' counsel asserts that "Mr. Garcia acted directly under the direction of Robert Hammond." MTRO at p. 2, ¶ 2. Plaintiffs' counsel fails to cite anything in the record to support this baseless assertion because no such evidence exists. (In fact, Mr. Hammond was deposed yesterday and specifically denied asking Mr. Garcia to make any calls and also testified he was not aware that the calls were going to be made.) Assertions by plaintiffs to the contrary are flat out misrepresentations to the Court based upon mere conjecture by Plaintiffs' counsel.[5]  For this reason alone – no *evidence* whatsoever of a corporate officer instructing Mr. Garcia to call Mr. Stocks – the MTRO should be denied.  See, e.g., *Smart Profitability Sols., LLC v. Double Check Risk Sols., LLC*, No. 1:18-CV-706-MHC, 2018 WL 6380885, at *3 (N.D. Ga. May 23, 2018), *modified,* No. 1:18-CV-706-MHC, 2018 WL 3954748 (N.D. Ga. June 6, 2018), and *modified,* No. 1:18-CV-706-MHC, 2018 WL 3470290 (N.D. Ga. June 27, 2018)(A temporary restraining order is an extraordinary remedy which should be granted only when the movant clearly carries the burden of persuasion as to each of the four prerequisites),

---

[5]     Plaintiffs' counsel *speculates* that Mr. Hammond "directed" Mr. Garcia to call Mr. Stocks, *arguing* that this conjecture was based not on facts, or any evidence, but on intuition: "… logic and common sense tell us that [Mr. Garcia] did not initiate these threatening telephone calls without being directed by Robert Hammond, the sole owner of PartsBase …" because as the owner of PartsBase, Mr. Hammond has a financial stake in this litigation. MTRO at p. 2, ¶7.

Stated differently, Plaintiffs' counsel – *without the benefit of any credible or admissible evidence* – urges this Court to simply accept rank speculation as a basis for seeking injunctive relief. This remedy would be without basis and only underscores that Plaintiffs' case is based on speculation.

*citing McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

Mr. Garcia's intentions in calling Mr. Stocks were sincere in that he wanted to be certain that three individuals he thought were his friends understood the potential financial consequences of their choice to participate in this litigation. Exhibit 1, ¶7. At all times Mr. Garcia was free to make this call and he did not violate any court order when he did so because he did not do so at the direction of a company officer, and there is no evidence that he did, he is not a party to this litigation, and he was personal friends with the individuals in question. Once again, Mr. Garcia placed telephone calls to not only Christopher Stocks but also Joseph Just and Ozzie Pinilla. *Id.* Significantly, rather than producing declarations from Messrs. Just and Pinilla, plaintiffs instead rely upon the perjured declaration of Mr. Stocks which should be ignored by this court.

## IV.    Plaintiffs' Counsels' Conduct is Sanctionable Under 28 U.S.C. §1927

Plaintiffs' counsels' conduct in filing the MTRO and emergency motion [DE 126] is sanctionable by this Court. Both motions were filed by Plaintiffs' counsel in bad faith.

The plain language of the statute imposes three essential requirements for an award of sanctions under § 1927:

> First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

*Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir.1997). The Eleventh Circuit has consistently held that an attorney multiplies proceedings "unreasonably and vexatiously" within the meaning of the statute when the attorney's conduct is so egregious that it is "tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007), *citing Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991); *see also Norelus v. Denny's, Inc.*, 628 F.3d

*Martin v. PartsBase, Inc.*
Case No. 9:20-cv-80235-DLB
Response Opposing Motion for Temporary Restraining Order

1270, 1284 (11th Cir. 2010); *Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir.2003)

("'Bad faith' is the touchstone.").

Plaintiffs' MTRO and "emergency" motions do not outline any credible admissible evidence required to satisfy the high standard of preliminary injunctive relief. See *Smart Profitability Sols., LLC, Infra,* at *3 (N.D. Ga. May 23, 2018). In fact, beyond their erroneous and often times conclusory assertions, Plaintiffs offer no credible basis for this Court to award sanctions, much less an injunction. Only by sanctioning Plaintiffs' attorneys for even proposing such an action on the face of such a lack of evidence will they have a sufficient incentive to stop filing frivolous motions.

It should be noted, and as touched on again below, the MTRO was filed over a month *after* Stocks said there was a call between him and Garcia; and over 3 months (based on when Joseph Just opted out, in June 2020) *after* Stocks claims Garcia must have spoken to Just. That timing, of waiting months after the alleged acts to file the MTRO, coincides with all of the following vexatious Motions just filed by Plaintiffs in the last month or so:

1. Plaintiffs' Motion for Sanctions against PartsBase and Robert Hammond for Failure to Comply with this Court's Order, Request for Forensic Expert and Request for Oral Argument [DE 127] (Filed September 23, 2020)

2. Plaintiffs' Motion For Sanctions For Defendants' Concealment of Evidence, Withholding Evidence And Interfering With The Discovery Process in Violation of Rule 37, And Vexatious Litigation [DE 134] (Filed September 30, 2020)

3. Plaintiffs' Motion for Temporary Restraining Order, Injunction, Issuance of Corrective Notice and for Sanctions [DE 138] (Filed October 6, 2020)

4.  Plaintiffs Motion for [for] Sanctions for Spoliation, Destruction of Records and Failure to Preserve Records and ESI [DE 140] (Filed October 7, 2020)

5.  Plaintiffs' Motion to Strike Affirmative Defenses or in the Alternative Motion for More Definite Statement [DE 116] (Filed September 3, 2020)

6.  Plaintiffs' Motion to Dismiss Defendants' Counterclaims [DE 117] (Filed September 3, 2020)

7.  PartsBase's Response Opposing Plaintiffs' Motion to Dismiss Counterclaim [DE 130] and Defendants' Response Opposing Plaintiffs' Motion to Strike Affirmative Defenses or in the Alternative Motion for More Definite Statement [DE 131] (Filed September 28, 2020)

8.  Plaintiffs' Fourth Amended FLSA Section 216B Collective Action Complaint and Demand for Jury Trial [DE 136] (Filed October 2, 2020)

This was all a colossal waste of time, because approximately 5 weeks prior, Defendants consented to Plaintiffs filing an amended complaint (the just filed Fourth Amended Complaint, D.E. 136). Plaintiffs' counsel sat on that consent, filed Motions to Dismiss and Strike that PartsBase's counsel had to devote significant time to, only to then file the Fourth Amended Complaint.  Clearly, causing PartsBase to have to spend time and resources on pleading driven motion practice that could have been avoided until after the Fourth Amended Complaint was filed was a strategic ploy designed to drive up fees and cause distraction from complying with the discovery obligations ordered by the Court.  This sort of gamesmanship, where Motion practice is vexatiously used by Plaintiffs, should not be countenanced. On October 8, 2020, the Court's Paperless Omnibus Order [DE 142] denied three of the foregoing Motions.

Further, the relief sought in the MTRO seeks in large part a second notice to all employees. This requested relief bears no relationship to – even taking Plaintiffs' allegations at face value –

the social calls months ago that Mr. Garcia made to persons he thought were friends.  Nowhere is there a showing Mr. Garcia called others; there is no evidence the calls were at the behest of an officer of Partsbase (Mr. Hammond, in particular); and there is no showing that after Garcia spoke to Stocks, or Partsbase conveyed its settlement offer to Plaintiffs, that any plaintiff even was informed of the events, much less opted out (none have).  The MTRO is in reality just a further vexatious attempt to gain the relief sought in the Plaintiffs' mis-titled and meritless "Emergency" Motion for Civil Contempt and Sanctions for Violating Court Order on Conditional Certification [DE 126; responded to by Defendants at DE 137], and to an unwarranted second bite at expanding the class after the optin period has expired.

**V.      Plaintiffs are not Entitled to Injunctive Relief**

The four factors this Court must consider in determining whether temporary restraining or preliminary injunctive relief is to be granted require Plaintiffs to establish: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on PartsBase; and (4) that entry of the relief would serve the public interest. *See Schiavo ex rel Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005) *citing Ingram v. Ault,* 50 F.3d 898, 900 (11th Cir. 1995); and *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir.2000) (en banc).

Plaintiffs are not entitled to injunctive relief because, as established above, the MTRO is based on perjured testimony and that is the lone evidence relied upon by Plaintiffs in seeking injunctive relief. As such, Plaintiffs cannot show a substantial likelihood of success on the merits.

Similarly, and again because Plaintiffs have no credible admissible evidence in support of the MTRO, they cannot demonstrate irreparable injury. Indeed, of the entire class of opt-in plaintiffs, they can only identify one plaintiff they speculate *may* have withdrawn from the class

for reasons relating to Mike Garcia's singular telephone call to that individual. Of course, Plaintiffs only have speculation on that question at this point.  But it is denied that the mere admitted fact of Mr. Garcia's personal, social phone call to Mr. Stocks proves there was direction to Mr. Garcia from any corporate officer to make that call, or to have the discussion that was had.

To be sure, the non-existent threatened injury to plaintiffs – which  is seemingly based upon Mr. Stocks' invitation *to* Mr. Garcia to get a beer together  – does not even come close to outweighing the harm such injunctive relief would inflict on PartsBase because it would effectively diminish or even eliminate PartsBase's ability to effectively defend against Plaintiffs' frivolous claims. Finally, entry of injunctive relief for plaintiffs will not serve the public interest because the public has no interest in frivolous litigation.

**VI.     There is no Need for this Court to Limit Communications Between PartsBase and its Current or Former Employees Who are not Plaintiffs or Opt-in Plaintiffs**

While it is true that "[i]n general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a "heightened sensitivity" for first amendment concerns … in ascertaining the existence of good cause, four criteria are determinative: [(1)] the severity and the likelihood of the perceived harm; ([2]) the precision with which the order is drawn; [(3)] the availability of a less onerous alternative; and ([4]) the duration of the order." *Kleiner v. First Natl. Bank of Atl.*, 751 F.2d 1193, 1205 (11th Cir. 1985), *citing In re San Juan Star Co.,* 662 F.2d 108, 116 (1st Cir.1981); and *United States Postal Service v. Athena Products, Ltd.,* 654 F.2d 362, 367 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 915 (1982).[6]

---

6     Plaintiffs cite to a litany of cases from around the country framing or rejecting injunctive relief in FLSA collective action cases where defendants have affirmatively engaged in what many of those courts have concluded were improper efforts to minimize the number of potential opt-in plaintiffs. MTRO at pp. 9-14. Because Plaintiffs have not offered any evidence of wrongdoing by

*Martin v. PartsBase, Inc.*
Case No. 9:20-cv-80235-DLB
Response Opposing Motion for Temporary Restraining Order

Plaintiffs have made no showing they are entitled to any injunctive relief. First, and as noted above, Mike Garcia's telephone calls to Messrs. Stocks, Pinilla and Just were social calls made by Mr. Garcia out of concern for their well-being. Exhibit 1, ¶7. The calls were not made on behalf of PartsBase or at PartBase's direction, and there is no evidence that they were. *Id.* at ¶8. PartsBase was not aware of Mr. Garcia's calls until he disclosed them to Mr. Schmidt.

Plaintiffs have not established any wrongdoing by PartsBase. Similarly, other than conjecture, they have not established Mr. Garcia's social calls had any genuine impact on Mr. Stocks, nor any impact on Pinilla and Just (who provided no evidence at all). While Mr. Stocks claims to have been intimidated, we know this to be a lie from the beer invite and the boating outing accepted, and Mr. Stocks remains an Opt-in Plaintiff in this litigation. Thus, the sole piece of "evidence" offered by Plaintiffs in support of the request for injunctive relief completely contradicts their assertion that they will suffer harm. In any event, and in an abundance of caution, Mr. Garcia has been requested by PartsBase not to make any additional telephone calls to any named or opt-in plaintiffs. *Id.* at ¶13. Mr. Garcia has assured PartsBase of his intention to comply with this request. *Id.*

**VII.  PartsBase has not Engaged in Sanctionable Conduct**

PartsBase has not engaged in sanctionable conduct. On the contrary, PartsBase has done nothing to justify the relief sought against it in the MTRO. Plaintiffs are overreaching and making baseless assertions.

Plaintiffs ask this Court to sanction PartsBase's alleged misconduct using its inherent authority, (MTRO at p. 15), *citing Quiroz v. Superior Bldg. Maint., Inc.*, 2008 WL 3540599 at *5

---

PartsBase – only their conjecture – these cases should be disregarded by the Court. Also, the facts present here are not remotely similar to the facts in each of the cited cases.

(S. D. Fla. Aug. 12, 2008). This is yet another example of Plaintiffs' attorneys' bad faith because the evidence in *Quiroz* justified the relief sought, unlike here, where there is a complete absence of evidence. More specifically, the district judge in *Quiroz* found that the combination of the plaintiff's attempt to tamper with witnesses by offering to provide them a portion of his FLSA recovery in exchange for favorable testimony; the plaintiff's perjured affidavit; and the plaintiff's dishonest testimony at an evidentiary hearing clearly and convincingly established the plaintiff's bad faith litigation misconduct, warranting the imposition of sanctions against him. Again, no such evidence exists here.

**VIII.   Plaintiffs' Argument that PartsBase's Settlement Offers are Evidence of Retaliation has no support in the law and is contrary to the cases they cite**

PartsBase conveyed settlement offers to each named Plaintiff and the Opt-in Plaintiffs through Plaintiffs' counsels. Citing *Burlington Northern and Santa Fe Ry. Co. v.* White, 548 U.S. 53 (2006); and *Rochon v. Gonzalez*, 438 F.3d 1211 (D.C. Cir. 2006), Plaintiffs argue the settlement proposal constitutes evidence of retaliation but neither of those cases involved employers levelling valid counterclaims against their current or former employees and, as such, are distinguishable.

For Plaintiffs to prevail on retaliation claims based on PartsBase's counterclaims, they must demonstrate that PartsBase's counterclaims (1) were filed for a retaliatory motive and (2) lack a reasonable basis in fact or law. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 343-44 (4th Cir. 2008) (reversing district court order dismissing retaliation claim where plaintiff alleged his employer filed a lawsuit against him with a retaliatory motive and without a reasonable basis in fact or law); *Barnes v. Akal Sec., Inc.*, 2005 WL 1459112, *5 (D. Kan. 2005) (agreeing with Defendants' analysis of the law that "the filing of a counterclaim cannot be actionable retaliation unless Plaintiffs establish (1) retaliatory motive, and (2) lack of a reasonable basis for the claims"); *Torres v. Gristede's Operating Corp.*, 2008 WL 4054417, *17 (S.D.N.Y. 2008) ("Courts have held that *baseless* claims

*Martin v. PartsBase, Inc.*
Case No. 9:20-cv-80235-DLB
Response Opposing Motion for Temporary Restraining Order

or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions, even though they do not arise strictly in an employment context.") (emphasis added); *Ergo v. Int'l Merch. Servs.*, 519 F.Supp.2d 765, 781 (N.D.Ill.2007) (holding that a compulsory counterclaim is not actionable for retaliation unless it is totally baseless); *Orr v. James D. Julia, Inc.*, 2008 WL 2605569, *17 (D. Me. 2008) (accord).

Notably, not a single plaintiff has dropped out since the settlement offer was made. Plaintiffs' counsel provides no evidence nor argument *of having even communicated the offer to the Plaintiffs*. Even Mr. Stocks' Declaration makes no mention of the settlement offer. Plaintiffs not only are frivolously asking for a prior restraint, but the Iowa case they rely on for restrictions in settlement communications, *Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545 (S.D.Iowa 2000), actually held that "[a] Defendant employer has the right to communicate settlement offers directly to putative class member employees", but it does not have the right to publish communications encouraging plaintiffs to opt out of the class, referring to a "somewhat misleading" "opinion article," not a settlement offer. *Id., citing Great Rivers Co-Op. of Southeastern Iowa v. Farmland Industries, Inc.*, 59 F.3d 764 (8th Cir. 1995). And that was in direct communication by the employer to the class, whilst here, a settlement offer was tendered to the class *through counsel* – a clear distinguishing factor – and there was no attempt at direct, in-person communication with the class by the employer, which was the circumstance in *Bublitz*.

*Bublitz* in no way prohibits the issuance of settlement offers through counsel; and in fact, emphasizes that any order doing so would infringe upon the employer's right to free speech. There are no cases cited by Plaintiffs where a Court has issued an order prohibiting an employer from tendering settlement offers through counsel to the employee class. This is an insupportable argument by Plaintiffs – that only they get to make settlement offers (or, as the case has been in

this case, extortive and repetitive demands backed up by virtually no evidence whatsoever, must threats of rising attorney's fees and costs). Indeed, *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), relied on by Plaintiffs here, unlike this case involved an attempt to have the Court limit the plaintiffs' counsel in that case from having direct communication with class members outside of a pre-approved specific form. The Supreme Court held that restrictions on settlement communications were inappropriate and would restrict information relevant to an employee's choice. *Id.* at 101-102, 104 (any order should be carefully drawn so that it "limits speech as little as possible, consistent with the rights of the parties," and the order at issue "abused [the court's] discretion."). PartsBase has the right to send Plaintiffs' counsel settlement offers. Plaintiffs' seeking to restrict this right or the type of offer that can be made is at its core an attempt to impose an unconstitutional prior restraint designed to deprive PartsBase of its right to free speech, of its right to seek to settle this case, and is anathema to the policy that FLSA cases should be settled where possible. Fed. R. Civ. P. 23, Fed. R. Evid. 408. Even *Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc.*, 214 F.R.D. 696 (S.D. Ala. 2003), also relied on by Plaintiffs, found that any restraint on defendants' direct communications with class members (again, no allegation of direct communication is made here with respect to the settlement offer sent to Plaintiffs' *counsel*) cites to *Bublitz* to conclude that "[a] defendant … has the right to communicate settlement offers directly to putative class members." *Id.* at 699, *Bublitz*, 196 F.R.D. at 548. ***Plaintiffs' Motion omits from its argument to the Court that the two cases upon which Plaintiff primarily relies both found that (1) settlement offers are not coercive in nature; and (2) that settlement offers sent directly to class members cannot be prohibited.*** This is yet another example of Plaintiffs not only lacking candor to this tribunal, but in fact of arguing for a result that the cases they rely upon call, as in *Gulf Oil*, an abuse of discretion. PartsBase has tried to find a case where a settlement offer tendered

*Martin v. PartsBase, Inc.*
Case No. 9:20-cv-80235-DLB
Response Opposing Motion for Temporary Restraining Order

to class counsel was held coercive, and it has yet to find such a case. Plaintiffs have not found

such a case either; indeed, Plaintiffs' own cases would allow PartsBase to tender offers directly to

the class members, without even going through counsel.

It should be noted that Plaintiffs argue that additional monetary consideration is sought

from Martin and Levinson was due to their being named Plaintiffs. In fact, Plaintiffs had already

demanded in a September 29, 2020 email to Defendants' counsel – in violation of the recent 11th

Circuit ruling in *Johnson v. NPAS Solutions, LLC*, __ F.3d __, 2020 WL 5553312, *6, *14 (11th

Cir. Sept. 17, 2020) that class plaintiffs cannot be awarded incentive fees – that Martin and

Levinson should receive a larger sum of money than the rest of the plaintiff class in consideration

for their providing PartsBase with releases. Plaintiffs' counsel may not refer to this larger sum

they sought only for Martin and Levinson as named plaintiffs as the demand of an impermissible

incentive fee prohibited by *Johnson*, but it certainly looks, walks, and quacks like one.

As to Mr. Garcia's call, a second misleading aspect of Mr. Stocks' September 30, 2020

Declaration lays in its paragraph 8, where it provides hearsay that Joseph Just dropped out because

of Mr. Garcia. Mr. Just did not provide a statement; and importantly, paragraph 8 of Stocks'

Declaration does not provide a date. That is because Joseph Just who opted in on June 5, 2020

opted out of this case on June 19, 2020, over 2 months before Stocks' Declaration refers to Stocks'

call with Garcia on September 3, 2020. Plaintiffs waited 3 months after Mr. Just's opt-out, and 1

month after the 'lets have a beer' call between Mr. Stocks and Garcia, to file the MTRO. Paragraph

8 of Stocks' Declaration in no way suggests the alleged hearsay in hearsay summary by Mr. Stocks

of an alleged call between Mr. Garcia and Mr. Just; indeed paragraph 8 of Stocks' Declaration is

clearly written to suggest a temporal proximity between the alleged calls to Just and to Stocks,

where even using an interpretation most favorable to Stocks, the calls would have been over two-months apart. Underscoring that Stocks' Declaration is horribly twisted.

Even assuming the retaliatory motive prong is met, Plaintiffs' retaliation claim must fail if they cannot prove that the counterclaims lack a reasonable basis in fact or law. *See Darveau*, 515 F.3d at 343 - 44; *Barnes v. Akal Sec., Inc.*, 2005 WL 1459112, *5-6. As the court held in *Barnes*, "the ultimate standard for determining whether a counterclaim has a 'reasonable basis' is whether there is a genuine issue of material fact." 2005 WL 1459112, *6. Because PartsBase's counterclaims are not baseless, Plaintiffs cannot meet both elements required to prove that PartsBase's counterclaims constitute actionable FLSA retaliation and they cannot be raised against PartsBase as evidence of unlawful retaliation.[7]

## CONCLUSION

The lone piece of *evidence* offered in support of the MTRO is the perjured declaration of a former PartsBase employee, Christopher Stocks. Mr. Stocks must be sanctioned accordingly. Similarly, based upon their repeated violations of 28 U.S.C. §1927 during this litigation, this Court should award PartsBase sanctions representing the fees incurred by PartsBase in having to respond to this MTRO and the "emergency" motion, [DE 126]. Plaintiffs' counsels' conduct in filing the MTRO and emergency motion [DE 126] is sanctionable by this Court. Both motions were filed by Plaintiffs' counsel in bad faith.

The cornerstone of the MTRO is premised upon a social telephone call between Mike Garcia, a current PartsBase manager, and Mr. Stocks, a friend, questioning whether Mr. Stocks

---

7    Plaintiffs' assertions regarding *Lynn's Food Stores Inc. v. U.S. Dep't of Labor,* 679 F.2d 1350, 1355 (11th Cir. 1982) are incorrect. Plaintiffs and their counsel have no factual basis to contend the Court would never approve a settlement along the lines outlined by PartsBase. If the proposal was accepted by Plaintiffs – or any of them – PartsBase is confident the Court would approve the settlement, especially given the fact Plaintiffs' claims against PartsBase are frivolous.

had been fully informed about the gravity of making false allegations of knowingly unpaid overtime in this lawsuit could represent. Because PartsBase has established that the lone piece of *evidence* filed in support of the MTRO is Stocks' perjured declaration, this Court should summarily deny the MTRO and enter sanctions accordingly. At a minimum, if the Court is not inclined to deny the relief sought in the MTRO based upon its reliance on perjured testimony, the Court should conduct an evidentiary hearing. Mr. Garcia did not place this call at the direction of anyone at PartsBase, let alone Robert Hammond, but such a hearing for that purpose is unnecessary, because the MTRO offers *no* evidence of any such instruction by Hammond to anyone and counsel's argument, totally lacking in evidentiary support, must be rejected as both reckless and impermissibly speculative.

Plaintiffs are not entitled to injunctive relief because, as established above, the MTRO is based on perjured testimony and that is the lone evidence relied upon by Plaintiffs in seeking injunctive relief.  Plaintiffs offer no evidence of any person dropping out after Mr. Garcia's call with Mr. Stocks, nor that any other plaintiff has even asked about doing so, nor that Plaintiffs' counsel even made the opt-in class aware of the call.  The same is true of the settlement offer; not a plaintiff has opted out, and there is no evidence they even know of the offer, much less any having provided evidence of concern about it.  Given that they have offered no evidence, and the law is against them, Plaintiffs cannot show a substantial likelihood of success on the merits, irreparable harm or that injunctive relief would benefit the public.

Finally, and even assuming the retaliatory motive prong is met, Plaintiffs' retaliation claim must fail because they cannot prove that the counterclaims lack a reasonable basis in fact or law.[8]

---

[8]     In the caption of the MTRO, Plaintiffs indicate they are seeking a corrective notice. The body of the MTRO does not address this issue other than as a remedy demanded, so it is waived.

*Martin v. PartsBase, Inc.*
Case No. 9:20-cv-80235-DLB
Response Opposing Motion for Temporary Restraining Order

WHEREFORE PartsBase requests this Court to 1) summarily deny Plaintiff's Motion for

Temporary Restraining Order, Injunction, Issuance of Corrective Notice and for Sanctions; 2)

enter sanctions against Plaintiffs' counsels for violating 28 U.S.C. §1927; and 3) for such other

and further relief as this Court deems appropriate.

Respectfully submitted,

HODKIN STAGE WARD, PLLC
Counsel for Partsbase, Inc.
and Robert Hammond
54 SW Boca Raton Boulevard
Boca Raton, FL  33432
Phone: 561-810-1600
Fax: 561-300-2128

By:    /s/ Adam J. Hodkin
     Adam J. Hodkin, FBN 962597
     ahodkin@hswlawgroup.com and
     Philip Ward, FBN 869600
     pward@hswlawgroup.com and
     Secondary email: jshand@hswlawgroup.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 13, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of this document is being served this day on all counsel of record identified on the Service List below via Notice of Electronic Filing generated by CM/ECF.

/s/ Adam J. Hodkin

## SERVICE LIST

Mitchell L. Feldman
Feldman Legal Group
6940 W. Linebaugh Avenue, Suite 101
Tampa, FL 33625

Email:  mlf@feldmanlegal.us
     jquintus@feldmanlegal.us
     dflores@feldmanlegal.us
     mail@feldmanlegal.us

Benjamin Williams
Williams Law, P.A.
464 Sturdivant Avenue
Atlantic Beach, FL 32233

Email:  bwilliams@williamslawjax.com

# EXHIBIT "1"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 9:20-cv-80235-DLB

SHAWN MARTIN and STEVEN LEVINSON,
individually and on behalf of all others similarly situated,

      Plaintiff,

v.

PARTSBASE, INC. d/b/a GOVGISTICS, and
ROBERT HAMMOND

      Defendant.

_____/

## DECLARATION OF MIKE GARCIA

I, MIKE GARCIA, in lieu of affidavit in accordance with 28 U.S.C. § 1746, state as

follows based on my own personal knowledge:

1.    I am over the age of 18.

2.    This declaration is made freely by me and is based upon my personal knowledge.

3.    I work as a Sales Manager at PartsBase.

4.    My practice as a manager at PartsBase is to form strong relationships with the
employees I manage.

5.    I formerly managed Ozzie Pinilla and Joseph Just and over the duration of their
employment at PartsBase, we became friends. On more than 20 occasions, each of them joined me
for parties at my home or for outings on my boat.

6.    I did not manage Jason Stocks but over the course of his employment at PartsBase
we became friendly and I considered him to be a friend.

7.    When I realized that Mr. Stocks, Mr. Pinilla and Mr. Just were suing PartsBase for

*Martin and Levinson v. Partsbase*
Case No.: 20-cv-80235-DLB
Declaration of Mike Garcia Under Penalty of Perjury

not paying them overtime and that PartsBase was making claims against them as well, I called each of them out of concern because I did not think they understood the potential financial risks they were taking.

8.      The decision to call Mr. Stocks, Mr. Pinilla and Mr. Just was made by me. Nobody at PartsBase (including Robert Hammond) asked, directed, or instructed me to call Mr. Stocks, Mr. Pinilla and Mr. Just. Nobody at PartsBase mentioned or even implied I should consider calling Mr. Stocks, Mr. Pinilla and Mr. Just.

9.      My intention in making the calls was based on my concern for them because I knew that throughout their employment at PartsBase, they each repeatedly and voluntarily signed written statements confirming they were not owed any money from PartsBase for overtime or otherwise. Also, I knew that throughout their employment at PartsBase, they each repeatedly and voluntarily allowed themselves to be video-recorded confirming they were not owed any money from PartsBase for overtime or otherwise.

10.     I did not and do not intend to harass or intimidate Mr. Stocks, Mr. Pinilla or Mr. Just.

11.     I do not understand why Mr. Stocks says otherwise in his statement and also says we were not friends.

12.     Photographs of Mr. Pinilla and Mr. Just at my home for a party are attached to this statement. Also, a screenshot text exchange between myself and Mr. Stocks talking about getting a beer together and possibly going out on my boat with our kids is also attached to this statement.

13.     I have been asked by Greg Schmidt, President of PartsBase, not to call any of my friends who are now named as Plaintiffs or Opt-in Plaintiffs and I have agreed not to initiate any contact with them.

2

*Martin and Levinson v. Partsbase*
Case No.: 20-cv-80235-DLB
Declaration of Mike Garcia Under Penalty of Perjury

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 13, 2020

Mike Garcia

# PHOTOGRAPHS AND SCREENSHOT





**Lori Marino**
Oct 14, 2017 · 👥

With **Mike Garcia**.

👍 4

Case 9:20-cv-80725-DLB   Document 144   Entered on FLSD Docket 10/13/2020   Page 26 of 31







416 of 467





**Mike Garcia** at **Key West Paradise USA**
Jul 23, 2017 · 👥

Awesome time last night!!

👍 25                                    1 Comment

 Like          💬 Comment

Case 9:20-cv-80235-DLB   Document 144   Entered on FLSD Docket 10/13/2020   Page 28 of 31



**Tony Cannuscio**
Mar 12, 2017 ·

Adrianna's Birthday celebration 🎈 ...damn... See More

👍 31                                    4 Comments

👍 Like                          💬 Comment

  



**Mike Garcia** at **West Palm Beach Intercoastal Waterway**

Nov 14, 2015 · 👥

 1

 Like           Comment



**Jessica Ascher**
Nov 9, 2015 · Loxahatchee · 

With **Mihai Costin** and **3 others**.

 10                                    1 Comment

Like                          Comment

9:44

# New conversation

Jason Stocks —

Recipient ⊕

J With all due respect
9:03 AM

Hey Jason, like I said i wanted to make sure you herd something from me as well. All the years I allways respected you, and still do. If I can ever help let me know.
9:04 AM

J I appreciated hearing from you. I would have thrived under your direction. Let's get a beer someday.
9:06 AM

Totally or one day bring the little kid and my daughter we take the boat or something =)
9:07 AM

J You damn right. That sounds great.
9:07 AM

How old is your little pne

One
9:10 AM

J He's 5   9:11 AM

Lauren 4 and half
9:14 AM

J A play date one day then for sure   9:53 AM

Si =)