UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-80235-Civ-Brannon

SHAWN MARTIN, individually,
and on Behalf of all others Similarly Situated,

    Plaintiffs,

vs.

PARTSBASE, INC d/b/a GOVGISTICS, and
ROBERT HAMMOND,

    Defendants.

_____/

**ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING
ORDER, INJUNCTION, ISSUANCE OF
CORRECTIVE NOTICE AND FOR SANCTIONS [DE 138]**

THIS CAUSE is before the Court on the Plaintiffs' Motion for Temporary Restraining Order, Injunction, Issuance of Corrective Notice and For Sanctions ("Motion") filed on October 6, 2020. [DE 138]. Upon thorough and careful review of the record, the evidence, and the arguments of counsel, the Motion [DE 138] is **GRANTED in part** and **DENIED in part** for the reasons set forth below.

    I.    **BACKGROUND AND FINDINGS OF FACT**[1]

On February 18, 2020, Plaintiffs' brought this action seeking damages for Defendants' alleged failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq* ("FLSA"). [DE 1]. On October 2, 2020, Plaintiffs filed the Fourth Amended Complaint

---

[1] To the extent the Court cites to and relies on the testimony subject to Defendants' written objections, the objections are overruled.

(the "FAC"), which is the operative complaint. [DE 136]. Plaintiffs allege Defendants employed similarly situated individuals as Inside Sales Representatives ("ISR"). [DE 136 ¶ 78].

On April 27, 2020, Plaintiffs filed a Motion to Conditionally Certify Action and to Authorize Notice. [DE 28]. On May 14, 2020, the Court conditionally certified the following class:

> All persons employed by or performing work for Partsbase, Inc. as an Inside Sales Representative, under the job titles of Defense Analyst, Business Development Sales Representative, Account Executive and any other job title previously or currently used to describe persons working as ISRs at any time within the three (3) years preceding this lawsuit to the day of trial[.]

[DE 52 ¶ 2].[2]

In the FAC, Plaintiffs allege that Defendants violated the Fair Labor Standards Act for: (1) failing to pay ISR's overtime compensation; and (2) failing to maintain and preserve accurate and true records of all hours worked. [DE 136 ¶ 10]. Plaintiffs allege that Defendants maintained a scheme to avoid their obligations to pay overtime wages to ISR. *Id.* ¶ 4. Defendants shave or edit overtime hours from ISR's time records and also permit ISR's to work off the clock. *Id.* ¶ 5. Defendants maintained a common unlawful pay practice applicable to all ISR, shaving or editing off all work hours over forty (40) in each work week, and precluding the ISR from being able to report and log hours worked outside of the office. *Id.* ¶ 8. Defendants also maintained an unlawful policy requiring ISR to log off at the end of the shift to avoid incurring overtime wages, while continuing to urge, stress and encourage ISR to continue to work off the clock in order to meet sales goals, quotas and metrics. *Id.* ¶ 9.

---

[2] At the time, United States District Judge Middlebrooks presided over the case. Upon the consent of the parties, this case was referred to United States Magistrate Judge Brannon on July 29, 2020.

On October 6, 2020, Plaintiffs' filed the instant Motion. [DE 138]. The Motion contends that "[n]umerous Opt in Plaintiffs have opted out of this action after receiving threatening communications from Partsbase Inc.'s (Partsbase) currently employed Manger, Mike Garcia", and that "Mr. Garcia has acted directly under the direction of Robert Hammond (Hammond) and Partsbase to threaten, intimidate and scare off Plaintiffs and putative class members from opting into this case by presenting false information about the risks of the case." [DE 138 at 1-2]. In support, Plaintiffs attach an affidavit of Mr. Jason Stocks. [DE 138-1]. Mr. Stocks avers that on or around September 3, 2020 at about 10:15 AM, Mr. Garcia initiated a telephone call to him, warning him that if he did not opt out of this case, Partsbase will win $300,000 to $400,000 from Plaintiffs in damages for filing a frivolous lawsuit. *Id.* According to Mr. Stocks, Mr. Garcia said he was calling everyone he knows to get them out of the lawsuit. *Id.* Mr. Stocks states that he was intimidated by the communication, and fears for his physical and financial well-being. *Id.* According to Mr. Stocks, it was clear to him that Partsbase and Mr. Garcia were retaliating against him for opting into the case. *Id.* Mr. Stocks declares that he and Mr. Garcia are not friends, they do not socialize, and Mr. Garcia was not calling him as a friend. *Id.* Finally, Mr. Stocks avers that a former Opt-In Plaintiff, Mr. Joseph Just, told Mr. Stocks that Mr. Garcia had a similar conversation with Mr. Just, and Mr. Just dropped out of this case because of the statements made by Mr. Garcia. *Id.*

Upon an initial review of the Motion, the Court ordered expedited briefing. [DE 139]. Defendants filed a response. [DE 144].

In its response, Partsbase attaches the affidavit of Mr. Garica. [DE 144, PDF pg. 20]. In it, Mr. Garcia admits that that he contacted Mr. Stocks, Mr. Just, and another Opt-In Plaintiff, Ozzie Pinilla. *Id.* at 20-21. Mr. Garcia declares that he contacted Mr. Stocks, Mr. Just, and Mr.

Pinilla out of concern that they did not understand the potential financial risks they were taking. *Id.* at 21. Mr. Garcia declares that his concern stemmed from his knowledge that "throughout their employment at PartsBase, they each repeatedly and voluntarily signed written statements confirming they were not owed any money from PartsBase for overtime or otherwise. Also, [Mr. Garcia] knew that throughout their employment at PartsBase, they each repeatedly and voluntarily allowed themselves to be video-recorded confirming they were not owed any money from PartsBase for overtime or otherwise." *Id.* Mr. Garcia also declares that no one at Partsbase, including Robert Hammond, implied, asked, directed, or instructed him to make the calls. *Id.* He declares that it was not his intention of harass or intimidate Mr. Stocks, Mr. Just, and Mr. Pinilla, and that he does not understand why Mr. Stocks says they were not friends. *Id.* He states that Mr. Stocks was recently texting with him regarding socializing and that Mr. Pinilla and Mr. Just have been to his home for a party. *Id.* Finally, Mr. Garcia declares that the President of Partsbase asked him not to call any of his friends who are now named as Plaintiffs or Opt-in Plaintiffs, and Mr. Garcia has agreed not to initiate any contact with them. *Id.*

On October 14, 2020, the Court granted the portion of the Motion that sought a temporary restraining order ("TRO") and ordered as follows:

> Defendants, its employees, and agents, are hereby enjoined and restrained from contacting any Plaintiffs, Opt-In Plaintiffs, or putative collective members regarding this lawsuit.

[DE 145]. The Court ordered the TRO to be effective upon Plaintiffs' posting a $5,000.00 bond. The Court set the remaining issues in Plaintiffs' Motion for an evidentiary hearing and permitted the parties to conduct limited discovery in advance of the hearing. *Id.*

At the start of the November 12, 2020 evidentiary hearing, the Court noted that Plaintiffs had not posted the bond required for the TRO to become effective. Plaintiffs' counsel stated he

4

did not post the bond because he thought it best to wait until after the parties engaged in the Court ordered limited discovery to determine if the bond was necessary or if the Court's order granting the TRO had the effect of abating the behavior.  Plaintiffs' counsel proffered that, subsequent to the order granting the TRO, the deposition testimony releveled that Mr. Garcia had no further contact with any of the opt-in Plaintiffs.

The parties presented evidence and argument.  The Court finds as follows:

Mr. Garcia is a manager at Partsbase. [Garcia Dep. 7:7-7:16].  Mr. Garcia was Mr. Pinilla's boss and manager when Mr. Pinilla worked for Partsbase.  [Pinilla Dep. 9:1-9:5].  Mr. Just worked for Mr. Garcia during Mr. Just's employment at Partsbase.  [Just Dep. 14:9-: 14:12].  Mr. Stocks did not work for Mr. Garcia directly, but Mr. Stocks viewed Mr. Garcia as a manager. [Stocks Dep. 39:11-40:23, Garcia Dep. 54:17-55:3].

Mr. Just joined this lawsuit on June 5, 2020 at 4:39 PM.  [DE 59-2].  Mr. Garcia's boss, Mr. Schmidt, in a meeting, informed Mr. Garcia that Mr. Just had joined the lawsuit.  [Garcia Dep. 20:5-20:15].  Mr. Garcia called Mr. Just on Monday June 8, 2020.  [Garcia Dep. 19:23-19:25]. During his phone conversation with Mr. Just, Mr. Garcia told Mr. Just "You need to get out of this lawsuit because it's going to cost you a lot of money when they lose."  [Just Dep. 11:19-11:20]. Mr. Garcia warned Mr. Just that Mr. Just would be liable for $400,000.00 in attorneys' fees if he did not drop out of the lawsuit.  [Garcia Dep. 23:16-24:2].  Mr. Garcia also recommended that Mr. Just drop out of the lawsuit. [Garcia Dep. 46:5-46:13].  Mr. Garcia stated that if Mr. Just did not drop out of the lawsuit, that the nature of a prior harassment issue could be brought to light saying, "You don't want something like that coming out."  [Garcia Dep. 22:18-23:15].  After Mr. Garcia's call, Mr. Just spoke to his wife, an attorney.  [Just Dep. 15:3-15:9].  On June 19, 2020, Mr. Just withdrew his consent to join this lawsuit. [DE 63].

Mr. Pinilla joined this lawsuit on July 15, 2020. [DE 81-1]. Mr. Garcia called Mr. Pinilla on August 31, 2020. [Pinilla Dep. 18:25-19:5]. Mr. Garcia told Mr. Pinilla "You know, that lawsuit is basically a crock of shit, and you know, if you lose that case, you and the Plaintiffs will be paying hundreds of thousands of dollars." and "I'm just telling you, you know, you should just drop it because, you know, I don't want to see you get stuck with a huge bill at the end." [Pinilla Dep. 12:11-12:23]. Mr. Garcia told Mr. Pinilla that he could owe $250,000.00. [Pinilla Dep. 21:8:2116]. After the call, Mr. Pinilla spoke with his aunt, an attorney, about opting out due to Mr. Garcia's statements that there were potentially hundreds of thousands of dollars he might owe as the result of this lawsuit. [Pinilla 32:9-32:16]. Mr. Pinilla has not opted out of this action.

Mr. Stocks joined this lawsuit on July 7, 2020. [DE 75-1]. Mr. Garcia called Mr. Stocks on September 2, 2020. [Plaintiffs' Exhibit 8]. Mr. Garcia said "Hey, man. You'd better drop out of that lawsuit. Man, I know you're" -- "you're in it." [Stocks Dep. 21:6-21:7]. Mr. Stocks testified that "he told me that once we lose the lawsuit we were going to owe ... $400,000 in damages, if not more, and that I should really drop out." [Stocks Dep. 16:15-16:17]. As a result of Mr. Garcia's call, Mr. Stocks felt physically and financially intimidated. [Stocks Dep. 28:18-29:14]. Mr. Stocks testified that "This guy just called me out of the blue and told me I'm going to owe $400,000 in" --"in" "in fines or whatever"..."I was justified in in--calling the attorney and saying hey man is this true?" [Stocks Dep. 17:4-17:11]. Mr. Stocks has not opted out of this action.

None of the call recipients believed that Mr. Garcia's call was based upon a friendship or prior relationship. Mr. Just, Mr. Pinilla, and Mr. Stocks each believed that Mr. Garcia called on behalf of Partsbase. Mr. Just believed that Mr. Garcia was "talking for some other source." [Just Dep. 11:22-11:24]. Mr. Pinilla testified "It seems like you're just looking out for the benefit of the company when you don't even own it." [Pinilla Dep. 15:22-15:24]. Mr. Stocks testified "I mean,

6

when you tell somebody to drop out of a lawsuit, you have to think what is their -- unless they're doing it at the behest of the powers that be, you'd have to wonder why the hell they'd do that if they didn't have any skin in the game, so I wondered." [Stocks Dep. 22:13-22:18].

Mr. Garcia's belief that these three Plaintiffs could owe hundreds of thousands of dollars stems from his understanding that Defendants will seek attorneys' fees for defending this lawsuit. [Garcia Dep. 16:23-17:3]. Mr. Garcia states that he was instructed not to call Plaintiffs in this matter. [Garcia Dep. 31:4-31:9]. Despite this instruction, Mr. Garcia stated that he had three separate conversations with Mr. Schmidt about each call to Mr. Just, Mr. Pinilla and Mr. Stocks; [Garcia Dep. 30:19-30:25] and Mr. Garcia was never disciplined for making these calls. [Garcia Dep. 67:10-67:12]. There is no evidence that Mr. Garcia contacted any other opt-in Plaintiffs in this case.

## II.   CONCLUSIONS OF LAW

### a. *Injunction*

To obtain an injunction, a plaintiff must show: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). Plaintiff has not established the second element; therefore, is not entitled to an injunction. *See GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1329 (11th Cir. 2015) ("Failure to show any of the four factors is fatal" to a claim for a preliminary injunction); *see also Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247-48 (11th Cir. 2016) ("failure to meet even one [factor] dooms [the] appeal") (citation omitted).

On October 14, 2020, the Court found that a TRO was necessary to preserve the status quo—that is, to prevent Defendants and their agents from further contact with opt-in Plaintiffs regarding whether they should opt out of the case and the financial implications of opting into the case. *See Fed. Trade Comm'n v. Simple Health Plans LLC*, 379 F. Supp. 3d 1346, 1358 (S.D. Fla. 2019), *aff'd,* 801 Fed. Appx. 685 (11th Cir. 2020). However, Plaintiffs failed to post the required bond and never moved to seek relief from the bond requirement of Rule 65 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 65(c) (Court may issue an injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined[.]"). As such the TRO never went into effect in this case. Even without the TRO in place, as proffered by Plaintiffs' counsel, the evidence presented establishes that Mr. Garcia made only one call each to three of the opt-ins. Thereafter, Mr. Garcia has not contacted any opt-ins since Plaintiffs' filed their Motion. The behavior at issue in the Motion has been abated, which is fatal to the second element required to establish entitlement to an injunction. Moreover, the closing argument submitted by Plaintiffs' counsel on November 24, 2020 appears to abandon the argument that it is entitled to an injunction. As such, the Court now turns to the remaining relief sought in the Motion.

   b. *Sanctions and Corrective Notice*

Mr. Garcia learned who opted in the lawsuit during meetings with other managers. Mr. Schmidt told Mr. Garcia within hours of the filing of Mr. Just's consent form, which was late in the day on a Friday. Mr. Garcia made the call at issue to Mr. Just on Monday of the following week. Under these circumstances, Mr. Garcia acted within the scope of his role as a manager for Partsbase when calling the opt-in Plaintiffs at issue in the Motion. *See Weiss v. Jacobson,* 62 So. 2d 904, 906 (Fla. 1953) (An employer's liability for an employee's intentional acts may arise when

the acts are "within the real or apparent scope" of employment); *Hennagan v. Dep't of Highway Safety & Motor Vehicles,* 467 So. 2 d 748, 751 (Fla. 1st DCA 1985), *cited with approval in McGhee v. Volusia Cnty.,* 679 So. 2d 729, 732 (Fla. 1996) ("Conduct is within the scope of employment if it occurs substantially within authorized time and space limits, and it is activated at least in part by a purpose to serve the master. The purpose of the employee's act, rather than the method of performance thereof, is said to be the important consideration.").

Mr. Garcia's phone calls were misleading and coercive. The notion that the opt-in Plaintiffs will be subject to liability of paying "hundreds of thousands of dollars in Partbase's attorney's fees" is misleading. The FLSA does not provide a defendant/employer a fee entitlement for prevailing, and at the time of Mr. Garcia's communications, there were no counterclaims asserted against the opt-in Plaintiffs. What is true about class member liability in pursuing their FLSA claim was addressed in the Order to Conditionally Certify the Class: "Class members may be liable for incidental defense costs if they fail to obtain a favorable judgment. However, unless the court concludes that the litigation was undertaken in bad faith, class members will not be liable for defendant's attorney's fees." [DE 52]. Any counterclaim against opt-in Plaintiffs will have to be proven for Defendants to recover from the opt-in Plaintiffs on the counterclaims.

Mr. Garcia's communications with the opt-in Plaintiffs was coercive. There is no evidence to show that he called all qualifying ISR whether or not they had opted in. Mr. Garcia targeted only opt-in Plaintiffs that he knew and with whom he had a friendly working relationship. The Court observes that Mr. Garcia has a dominating presence and demeanor. The video deposition shows Mr. Garcia being sarcastic and confronting. Mr. Stocks credibly testified that he felt intimidated by Mr. Garcia. Mr. Pinilla credibly testified that he did not feel intimidated by Mr.

Garcia.  Mr. Just testified that he was going to opt out of the lawsuit before Mr. Garcia called him.  The Court finds Mr. Just's testimony questionable.

### 1. Sanctions Requested

In the Motion, Plaintiffs requested that the Court authorize the following:

> 1) provide Plaintiffs the right to send out a new notice speaking to the Defendants unlawful conduct and providing them the right to opt in through at Defendant's expense using a third party administrator of Plaintiffs' choosing; 2) provide after judgment, the opportunity for opt out Plaintiffs wage claims to be included based upon representative testimony, or provide the opted out Plaintiffs the option to re join the lawsuit; 3) enjoin and bar defense and Defendants from further communications with Plaintiffs; 4) terminate defense counsel from this action if the court finds that defense counsel was aware of this opt out campaign; 5) enter default judgment against the Defendants; 6) award Plaintiffs' counsel attorney's fees and costs.

[DE 138].  However, after further discovery and the evidentiary hearing, Plaintiffs' written closing argument seeks following relief: 1) invalidate the opt-out form of Mr. Just; 2) strike Defendants' counterclaims[3]; 3) issue a protective order; and 4) attorney fees and related costs in bringing this conduct to the Court.  [DE 200].

### 2. Protective Order and Sanctions Awarded

District courts are empowered with relatively broad discretion to limit communications between parties and putative class members.  *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201–03 (11th Cir.1985) (recognizing district court's authority to police class member contacts and to prohibit defendant from engaging in unsupervised, unilateral communications with plaintiff class members to solicit exclusion requests from Rule 23 class); *see also Hoffmann–La*

---

[3] Defendants' counterclaims were dismissed without prejudice on December 4, 2020.  [DE 215].

*Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) ("As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions."); *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1226 (S.D. Ala. 2008) (collecting cases). This is particularly true to limit "communications with putative collective members when such communications cross the boundaries of propriety, including when the communications are unbalanced, misleading, or factually inaccurate." *Longcrier*, 595 F. Supp. 2d at 1226 (quoting *Jones v. Casey's General Stores*, 517 F.Supp. 2d 1080, 1088 (S. D. Iowa 2007)). The communications, just like in Rule 23 cases, obstructed this Court in the discharge of its duties to oversee this collective action, and undermines the integrity of the judicial process. *Kleiner*, 751 F.2d at 1201–03 (citing *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 331 (1980).

Plaintiffs' request a protective order prohibiting "Defendants, their employees, and agents from communication by telephone, email, in person or any other means with the Named Plaintiff, Opt-In Plaintiffs and their family members regarding the pending lawsuit, settlement, their decision to participate as plaintiffs, or their representation." [DE 200]. The Court finds that a protective order is necessary, but finds that the Plaintiffs' request is an extremely broad formulation of relief which disregards the Supreme Court's admonition that any protective order issued in this context must give "explicit consideration to the narrowest possible relief which would protect the respective parties." *Bernard v. Gulf Oil Co.*, 619 F.2d 459 (5th Cir.1980) (en banc), *aff'd,* 452 U.S. 89, 101 (1981).

The Court has tailored its protective order to protect the respective parties and finds any broader restriction would go further than necessary to ward off the potential harm.[4] Accordingly,

---

[4] This protective order "is sensitive to the First Amendment because: (1) it does not interfere with communications unrelated to the current action and concerning the ongoing business relationship between

from the date of this order to the resolution of this action, Defendants may not contact any Plaintiffs, Opt-In Plaintiffs, or putative collective members regarding the financial implications of participating in this lawsuit.  This Order does not apply to Defendants' counsel.

In addition, because Mr. Just is the only opt-in contacted by Mr. Garcia that subsequently opted out of the action, Plaintiffs' counsel shall issue a corrective notice to Mr. Just.  The corrective notice shall follow the Order Conditionally Certifying the Class.  [DE 52].  The only addition to the notice shall be as follows:

> The Court determined that Mike Garcia's June 8, 2020 phone call to you involving this litigation was improper.  Because you opted out of the litigation after this improper communication, you have an additional 30 days to opt into the punitive class if you so choose.

The corrective notice shall include a copy of this Order.

### III.   CONCLUSION

Having considered the parties' written submissions and being otherwise fully advised, the Court hereby **ORDERS** that

1. Plaintiffs' Motion for Temporary Restraining Order, Injunction, Issuance of Corrective Notice and For Sanctions [DE 138] is **GRANTED in part** and **DENIED in part** as set forth in this Order.

2. It is ordered that, from the date of this order to the resolution of this action, Defendants may not contact any Plaintiffs, Opt-In Plaintiffs, or putative collective members regarding the financial implications of participating in this lawsuit.

---

Defendants and the potential class members; (2) its duration is appropriate ...; and (3) any less restrictive order would not effect the collective action's purposes." *Belt,* 299 F.Supp.2d at 669.

3. Within ten (10) days of this Order, Plaintiffs' counsel shall send a corrective notice to Mr. Just, strictly following the instructions set forth in this Order.  Defendant must reimburse Plaintiffs for the cost of sending out this corrective notice.

4. Plaintiffs are entitled to its attorney's fees and costs in bringing this issue before the Court, including the instant Motion, the ordered limited discovery on this issue, and the evidentiary hearing.  The amount of fees will be determined at a later date.

DONE AND ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 7th day of December, 2020.

_____
DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE