Shawn Martin and Steven Levinson, individually,
and on behalf of all others who have consented to
join this litigation,

      Plaintiffs,

v.                                    Case No.: 9:20-cv-80235-DLB

PARTSBASE, INC. and
ROBERT A. HAMMOND,

      Defendants.

---

## PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT AND ENTRY OF STIPULATED JUDGMENT IN FAVOR OF PLAINTIFFS

Plaintiffs, SHAWN MARTIN ("Martin") and STEVEN LEVINSON ("Levinson") individually and on behalf of all others who have filed filed their consent to join this litigation hereby move for this Court's review and approval of the settlement agreement between the Plaintiffs and Defendants (collectively the "Parties") and for entry of order approving the terms of the settlement agreement attached hereto as Exhibit 1, and entry of a Judgment as per *Lynn's Foods*, and in support thereof state as follows:

### INTRODUCTION

The Parties have entered into a Settlement Agreement (the "Settlement Agreement") pursuant to which Defendants shall pay Plaintiffs Martin, Levinson and the thirty-three (33) other

eligible[1] opt-in plaintiffs who have filed their consent to join this action, a sum of up to Eighty-One Thousand Dollars ($81,100.00) in exchange for the release of Plaintiffs' wage claims and dismissal of this case.  A copy of this executed FLSA Collective Action Settlement Agreement is attached hereto as Exhibit 1.  Separately and aside, Defendants have agreed to pay each of the thirty-nine (39) Plaintiffs the sum of $100.00 each ($3,900.00) in consideration for each Plaintiff to execute a separate Mutual General Release of Claims Agreement, a copy of which is attached hereto as Exhibit 2.

The FLSA Collective Action Settlement Agreement is contingent upon Plaintiffs Martin and Levinson's execution of the Mutual General Release of Claims Agreement but is optional for the remaining thirty-seven (37) Plaintiffs. A copy of Mr. Martin's and Mr. Levinson's executed Mutual General Release of Claims Agreements are attached hereto as Exhibits 3 and 4 respectively. The Mutual General Release of Claims Agreement for the remaining  thirty-seven employees will be offered on the same terms and form as Mr. Martin and Mr. Levinson.

Plaintiffs now move this Court for an order approving the terms of the Settlement Agreement, dismissing the case, entering judgment in favor of the Plaintiffs for the wages, approving the provisions of attorney's fees and costs, and retaining jurisdiction to enforce the terms of the Settlement Agreement. Given the significant risk and expense of continued litigation, the Settlement Agreement should be approved. The Settlement Agreement represents a fair, adequate and reasonable compromise of the claims at issue in light of the existence of disputed issues of

---

[1] Opt-In Plaintiffs Brenner and Reyes-Kasai did not have any workweeks in the statute of limitations. Plaintiffs Mishanina and Tutein did not have any workweeks in the statute of limitations in which they could have conceivably worked overtime.  Mishanina had only one week in the SOL where she worked only three hours. Tutein worked four weeks in the SOL where she worked 33, 32, 14 and 32 hours respectively; and therefore could not conceivably worked overtime hours under the Settlement Agreement.

fact, disputed issues of law, and questions of whether the Plaintiffs would obtain favorable judgment at trial.

## BACKGROUND

1. Plaintiffs were formerly employed by Defendants as inside sales representatives under various job titles selling access to Partsbase Inc.'s technology platforms to aviation business customers and federal government contractors.

2. On February 18, 2020 the Plaintiffs brought this action seeking damages for Defendants' alleged failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §201et. seq ("FLSA"). [DE 1]

3. On April 27, 2020, Plaintiffs filed a Motion to Conditionally Certify This Action and to Authorize Notice. [DE 28]. On May 14, 2020, the Court conditionally certified the action. [DE 52]. Thereafter, numerous persons filed Consent to Joint forms, agreeing to participate and asserting claims in this case, and agreeing to authorize the named Plaintiffs and their counsel to negotiate and settle on their behalf.

4. On October 2, 2020, Plaintiffs filed the Fourth Amended Complaint (the "FAC") [DE 136]. Then on December 18, 2020 Defendants filed their Answer and Affirmative Defenses to Plaintiffs' Fourth Amended Complaint ("FAC") and Partsbase's First Amended Counterclaim against Plaintiffs. [DE 229]. The FAC and Defendants' Answer and First Amended Counterclaim are the operative complaint and answer in this Lawsuit.

5. In their Answer and First Amended Counterclaim, Defendants denied liability, asserted various defenses and affirmative defenses and asserted counterclaims against all Plaintiffs for Breach of Loyalty (Count I) and Fraud (Count II)

6. Pursuant to the Court's Conditional Certification Order [DE 52], notice was issued to the putative class and, in total 44 former employees filed consent forms and thereby affirmatively opted into the Lawsuit as party plaintiffs. However, seven of these plaintiffs later withdrew their consent. Accordingly, there are 39 Plaintiffs, including the Named Plaintiff, who are involved in this case.

7. In lieu of filing their own individual lawsuit or action, each opt-in plaintiff specifically authorized Shawn Martin and Steven Levinson to negotiate and reach a settlement with the Defendants on their behalf and agreed to be bound by the terms of any such settlement reached according to the express terms of the Consent to Join Forms.[2]

8. The Named and opt-in Plaintiffs alleged that Partsbase failed to pay overtime compensation for work performed, alleging they worked off-the-clock, and that the company did not have accurate time records or an accurate time tracking system.

9. Partsbase and Hammond Answered the FAC denying the Plaintiffs' claims, and Defendants continue to deny any and all liability and any violation of the FLSA. Partsbase maintains that it properly paid the Plaintiffs for all hours worked, and that Plaintiffs did not work off-the-clock.

10. Partsbase has also filed affirmative defenses including the Section 207(i) Retail Exemption defense for all the Plaintiffs in addition to asserting counterclaims against the Plaintiffs.

---

[2] *See e.g.* DE 20-2 Consent Form of Earl Weiner. *" I* authorize the above named Plaintiff and designate him as my agent to make decisions on my behalf concerning the litigation, to negotiate and/or settle any and all overtime and minimum wage claims(s) I have against the Defendants under state or federal law, and to enter into an agreement with Plaintiff's counsel concerning the payment and compensation of attorneys' fees and costs."

11. Nonetheless, Partsbase has concluded that further litigation of this matter would be protracted, distracting and expensive, and thus it is desirable that this matter be fully and finally resolved in the manner and upon the terms set forth in the Settlement Agreements.

12. Despite Defendants' arguments and defenses, Plaintiffs believe that their claims have merit.

13. As the Court is well aware, since this litigation's inception this matter has been heavily litigated. The Court has held numerous hearings, evidentiary hearings and reviewed hundreds of filings. Moreover, there have been well over 20,000 pages of documents produced in response to discovery and subpoenas, and the parties have taken over 10 depositions.

14. Defendants presented video and documentary evidence showing that Plaintiffs averred that they did not work overtime hours and were not owed overtime compensation.

15. Conversely, Plaintiffs have presented evidence of two opt in Plaintiffs, Priscilla Wright and Nick Long, whose overtime hours were edited and removed from the time records.

16. Plaintiffs believe they would be able to establish the Plaintiffs' time records, and other evidence of work hour records (ie. badge swipes, CRM records, emails and time-edit records) were inaccurate and unreliable; and through careful analysis and comparison of all available records, that they would be able prove in fact there are numerous workweeks in which Plaintiffs were underpaid for overtime hours worked.

17. By the time the Parties engaged in mediation, both Parties were armed with significant information and evidence, including significant deposition testimony and a multitude of ESI, including the Partsbase time records.

18. On December 14, 2020 the Parties initiated mediation with experienced employment attorney and mediator, Lori Adelson, Esq. The mediation continued almost daily until January 7, 2020 - when the Parties reached a meeting of the minds of the terms of a settlement of the Plaintiffs claims and all related counterclaims.

19. The meeting of the minds was grounded upon a damages model prepared by Plaintiffs' Counsel. The damages model included each Plaintiffs' time records, time-edit records, hourly rate and value of commissions earned for each work week.

20. Throughout the course of the meditation, each side engaged in arm's-length negotiations, compromising on their respective positions and valuations of the claims, and separately on the amount of Plaintiffs' attorney's fees.

21. Each Plaintiff's estimation of overtime hours worked were then applied to the damages model's time records to determine the number of workweeks that could reasonably apply for each Plaintiff. By way of example, if a Plaintiff alleged that he/she worked 2 hours of overtime per work week, and the time records showed that Plaintiff clocked 39 hours - that is an eligible week and the Plaintiff was credited to 1 hour of overtime In contrast, if the time records showed Plaintiff only worked 24 hours, then that Plaintiff's work week was deemed ineligible. The purpose of this application was to account for vacation time, sick leave, holidays and otherwise short-time weeks.

22. Four individual Plaintiffs were determined to have no qualifying overtime hours during the applicable statute of limitations period: Donna L.Tutein; Jacqueline Reyes-Kasai;Yona Mishanina; and Robert Brenner.

23. Following this application, each remaining Plaintiff's potential damages were tallied and aggregated, and each Plaintiff was assigned a pro rata percentage of the total potential damages.

24. Ultimately, the Parties agreed to settle Plaintiffs claims for $81,100.00 in wages, with Defendants agreeing to offer each Plaintiff $100.00 (an aggregate of $3,900.00) in consideration for executing separate, not mandatory mutual release agreements.

25. The settlement payments that each Plaintiff receives pursuant to the Settlement Agreement, fairly and reasonably compensates them for their unpaid overtime compensation and liquidated damages that they might be awarded by a court or jury for their overtime hours during the qualifying workweeks.

26. The settlement reached equates to Defendants paying .912 hours of overtime in addition to an equal amount of liquidated damages for each week the Plaintiffs worked during the applicable two-year SOL period.

27. Plaintiffs, and their experienced FLSA wage and hour attorneys have determined that the settlement set forth in the FLSA Collective Action Settlement Agreement is in their best interest. Plaintiffs recognize and acknowledge the time and expense of continued litigation necessary to prosecute this case through summary judgment, trial and possible appeal. Moreover, the result is inherently uncertain and risky, including the risk of a recovery of $0.00 and possibility that Plaintiffs may be responsible for Defendants' taxable costs. Additionally, given the complex exemption arguments and asserted counterclaims presented by Defendants, continued litigation would be consumed by protracted litigation,

including motions for sanctions and other discovery disputes which detract from the litigation on the merits of Plaintiffs' overtime wage claims.

28. Although significant discovery has been conducted, there remain many genuine issues of factual and legal issues in dispute:

    a. Whether Plaintiffs performed work off-the-clock;

    b. Whether Defendants were aware of Plaintiffs' alleged work off-the-clock;

    c. Whether Defendants included commissions in the calculation of overtime rates when Defendants did pay overtime;

    d. Whether a two or three year statute of limitations should apply;

    e. Whether Defendants acted in objective and subjective good faith such that payment of liquidated damages applicable;

    f. Whether any of the individual defendants were employers within the meaning of the FLSA;

    g. Whether Plaintiffs were compensated for all compensable hours worked, and

    h. Whether Plaintiffs worked in excess of forty (40) hours and if so, whether Plaintiffs received proper overtime compensation.

    i. Whether defendants could assert and prove application of the Section 207i retail exemption.

29. Notwithstanding the foregoing, upon careful review of the Plaintiffs' payroll records, time records, time-edit records, emails, CRM records and badge swipe records, Plaintiffs Martin and Levinson, with assistance of counsel, determined that a compromise was in their best interests and the best interests of the opt in plaintiffs.

30. Plaintiffs took into consideration in reaching this compromise, the fact that had they proceeded to trial, there was a risk to the SOL limiting their wages to a 2 year period, back to approximately April 2018 and actual dates of opting into this action, and further that the court may decline to award liquidated damages.

31. On January 7, 2021, the Parties reached a negotiated settlement on the essential and material terms of this settlement, and all terms of the settlement were subsequently reduced to writing, and then approved by all parties and their counsel. Plaintiffs Martin and Levinson have both executed the written settlement agreement individually and in their representative capacity and as agents for the opt in Plaintiffs. The settlement agreement executed in counterparts is attached as Exhibit 1.

32. The Plaintiffs reached this settlement with advice of counsel and relied upon their counsel to analyze the payroll records, time records and other business records to perform wage calculations. The final settlement distributions were applied pro rata to each of the opt-in Plaintiffs according to their qualifying workweeks, the time records and time-edit records, their alleged unpaid overtime hours, and their own respective regular rates of pay.

33. Pursuant to the terms of the Settlement Agreement, Defendant, Partbase has agreed to pay Plaintiffs the aggregate sum of $85,000.00, which includes a separate payment of $100.00 for each Plaintiff for execution of a mutual general release. The release benefits the Plaintiffs as Defendants release the Plaintiffs from all counterclaims. Moreover, apart from the Named Plaintiffs, these general release agreements are optional for the opt-in Plaintiffs – meaning that if a Plaintiff chooses not to sign the mutual release, that Plaintiff will not be bound by the terms of the settlement. A copy of these separate general releases agreements are part attached hereto as Exhibits 3 and 4 and are clearly beneficial to both Parties.

34. The Plaintiffs note that this Court has previously approved FLSA settlements with general releases which had separate consideration in them, and in this case the Court encouraged

the Parties to include mutual releases in this settlement in recognition of the counterclaims alleged. [DE 239][3]

35. In addition to resolving the Plaintiffs' underlying claims, the Settlement Agreement resolves all outstanding claims for attorneys' fees and costs. Pursuant to the terms of the Settlement Agreement, the Parties separately negotiated and agreed for Partbase to pay Plaintiffs' attorneys' fees and costs, totaling $265,000.00, which includes reimbursement of Plaintiffs' costs incurred in this matter.

36. Plaintiffs' attorneys' fees and costs were separately negotiated and agreed upon by the Parties without regard to the amount paid to Plaintiffs so as not to affect the wages .

37. For purposes of settlement, the Parties stipulated that the quantum of attorneys' fees and costs is fair and reasonable pursuant to *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

38. On average, the attorneys' fees equate to less than $6,500.00 per Plaintiff, and are far below the actual loadstar fees Plaintiffs' Counsel incurred.

39. As the Court will note, in addition to the voluminous discovery production, this matter has been heavily litigated with many filings, hearings and evidentiary hearings.

40. Defendants have been represented by highly competent and professional counsel, who have vigorously represented the Defendants. Prior to the mediation, Defendants did not make any settlement offers, and Plaintiffs' Counsel were required to equal Defendants' efforts.

41. Accordingly, Michell Feldman has incurred 721.00 legal hours in this matter along with associate of Feldman Legal Group, Jason Quintus who has incurred 509.29 hours; and

---

[3] DE 239 - "As a reminder, the Court will not approve of any agreement containing a unilateral general release as opposed to mutual general releases."

Benjamin L. Williams has incurred in excess of 456.3 legal hours in this matter. Under a loadstar calculation this equates to in excess of $653,000.00.[4] *See* Exhibits 5 - Declaration of Mitchell L. Feldman and Exhibit 6 - Declaration of Benjamin Lee Williams.

42. Plaintiffs' Counsel accepted a substantial reduction in attorneys' fees so as to facilitate Plaintiffs' resolving the wage claims of the Plaintiffs, rather than drag this matter on wherein the attorneys' fees and costs would be the primary damages at issue in this case.

43. Moreover, given that Defendants continued to pursue counterclaim against them, Plaintiffs wanted a compromise and resolution of this action. Further, Plaintiffs' Counsel has conceded and even forfeited court-awarded attorney's fees [DE 222 p.13] and [DE 223 p. 4] to promote judicial efficiency - rather than drag this case into a second protracted litigation over the amount of Plaintiffs' attorneys' fees and costs, pursuant to the mandatory prevailing Plaintiff FLSA attorney's fees - an integral part of the damages for a prevailing Plaintiff in an FLSA action.

44. The amount Defendants have agreed and stipulated to pay Plaintiffs for incurred attorney fees and costs were separately negotiated and agreed upon by the Parties without regard to the amount agreed to be paid to Plaintiffs for wages; moreover the attorneys' fees and costs are fair and reasonable under the circumstances here.

45. On January 19, 2021, Defense Counsel provided their consent to file the instant motion.

WHEREFORE, for the reasons set forth above and as set forth in the below Memorandum of Law, Plaintiffs respectfully request (without opposition) that the Court enter an order approving the Settlement Agreement and enter Judgment for the Plaintiffs in the amount of the settlement

---

[4] Plaintiffs' Counsel's hourly rate is reasonably set at $425.00/hour, within reasonable range in this District.

agreement including attorney's fees stipulated to be paid and reserve Jurisdiction for a period of 60 days to enforce the terms.

## MEMORANDUM OF LAW

### I. THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT BECAUSE IT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF DISPUTED CLAIMS

#### A. The Settlement Meets the Requirements Set Forth in Lynn's Food Stores, Inc.

As the Eleventh Circuit explained in *Lynn's Food Stores, Inc. v. United States*, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "**may enter a stipulated judgment** after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353 (11th Cir. 1982). Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context." *Id.* at 1354. This is because the employees are "likely represented by an attorney who can protect their rights under the statute." *Id.* "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as coverage or computation of back wages, that are actually in dispute; [the Eleventh Circuit] allows the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

After scrutinizing the settlement, this Court will find that the Parties' Settlement Agreement is fair, reasonable and should be approved. The Stipulation resolves a *bona fide* dispute between the Parties with respect to whether the employees at issue are entitled to unpaid overtime compensation for work allegedly performed off-the-clock.

Furthermore, the Plaintiffs were represented by experienced wage & hour counsel, who in the "adversarial context of a lawsuit," negotiated a "reasonable compromise of disputed issues." on behalf of the Plaintiffs. *See id.* at 1354. When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Lynn's Food Stores*, 679 F.2d at 1353.

In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit has stated:

> *Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.*

*Lynn's Food Stores,* 679 F.2d at 1354.

Before approving a FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In determining whether the settlement is internally fair and reasonable, the Court should consider the following factors:

    A.  the existence of fraud or collusion behind the settlement;

    B.  the complexity, expense, and likely duration of the litigation;

    C.  the stage of the proceedings and the amount of discovery completed;

    D.  the probability of plaintiff's success on the merits;

     E.  the range of possible recovery, and

     F.  the opinions of the counsel.

*See Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)[5]

## B. The Settlement Was The Result Of Arm's Length Negotiations Free From Collusion

The settlement reached was the result of hard-fought, adversarial, arm's length negotiations that have taken place over litigation that has been ongoing for almost a year. In determining whether a settlement was negotiated at arm's-length, courts look to whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. *Pickett v. IBP*, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001). Here the settlement was negotiated at arm's-length by experienced counsel, free from fraud or collusion, and with the assistance of an experienced employment mediator. The Parties were able to settle this action only after they engaged in significant discovery, significant discovery disputes and multiple hearings. See *Diaz v. Hillsborough County Hos. Authority,* 2000 U.S. Dist. LEXIS 14061, *11 (M.D. Fla. Aug. 7, 2000) (*quoting Cotton*, 559 F.2d at 1330) (Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel"). The extensive hearings alone in this case establish the adversarial nature of this litigation, and the benefits of a compromised settlement. Moreover, Plaintiffs Martin and Levinson desired resolution in lieu of continued,

---

[5] *See also Dees v. Hydradry, Inc.*, 2010 WL 1539813, at *8 (M.D. Fla. Apr. 19, 2010); *Hamilton v. Frito-Lay, Inc.*, 2007 U.S. Dist. LEXIS 10287, at *2-3, (M.D. Fla. Jan. 8, 2007); *see also Hill v. Florida Indus. Elec., Inc.,* No. 6:06-cv-915-Orl-31JGG, 2007 U.S. Dist. LEXIS 9498, at *6, (M.D. Fla. Feb. 9, 2007); *Pacheco v. JHM Enters., Inc., et al.,* 2006 WL 948058, at *4 (M.D. Fla. Apr. 12, 2006). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton*, 2007 U.S. Dist. LEXIS at * 2-3*; see also Cotton v. Hinton.* 559 F.2d 1326, 1331 (5th Cir. 1977).

protracted litigation, time commitments and having to commit to attending a trial. The Court should find that the settlement was the result of arm's-length bargaining.

Based upon their extensive experience in wage and hour collective and class actions, Plaintiffs' counsel believe that on inspection, this Court will join them in concluding that the proposed Settlement Agreement is fair, reasonable and worthy of approval. It bears all the indicia of fairness warranting approval as set forth in *Lynn's Foods* because Plaintiffs were represented by experienced counsel, who, in the "adversarial context of a lawsuit" engaged in "serious, informed, arms-length negotiations" of "a *bona fide* dispute with respect to liability [and] amounts due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. *See Lynn's Foods,* 679 F.2d at 1353-54. Here, the Plaintiffs are each receiving on average, nearly $2,300.00 in compensation without having to prove anything to a jury, and based solely upon their alleged estimations of unpaid work hours. Each Plaintiff likewise is receiving a pro rata share based upon the hours each alleged and taking into consideration the qualifying workweeks for each individual.

### C. The Complexity, Expense and Duration of Litigation

The complexity, expense, and length of future litigation also militate in favor of this settlement. This case was filed in February 2020, and settlement was preceded by more than 9 months of heavy, contentious and complex discovery and litigation. During the pendency of the case, the Parties engaged in formal discovery, including exchanging over 20,000 pages of personnel files, time records, time-edit records, emails and CRM data, and hundreds of additional ESI files. Plaintiffs' counsel conducted multiple depositions of Partsbase Inc. officers and employees, and also analyzed and assessed all the payroll records and other Partsbase records and documents. This matter was ultimately resolved only after the parties engaged in extensive research and analysis and arms-length negotiations. Moreover, and equally important is the fact

that Defendants had not made any bona fide offer to settle the Plaintiffs wages claims until mediation.

If the Parties continued to litigate this matter, they would be forced to engage in costly and protracted discovery,litigation, and summary judgment briefing. With near certainty, this case would require a 10-day jury trial on questions of fact and damages in order to present the claims and defenses regarding whether Plaintiffs were required and/or permitted to work off-the-clock without overtime compensation. To prove their claims Plaintiffs would incur extensive costs involving depositions and other discovery costs. But Plaintiffs would also likely incur costly forensic computer analysis, costly ESI discovery, Further, Plaintiffs have already engaged an ESI expert; and the Parties would likely require one or more experts related to the underlying claims and/or defenses.

Thus, settlement is a reasonable means for both Parties to minimize their future risks and litigation costs, which could reach over $1MM in fees and additional costs or more by the time the case proceeded to a lengthy 10 day jury trial. Additionally, after careful review of the records and discussions with counsel, the Plaintiffs believe they are receiving a fair and reasonable amount of wages and do not wish to continue with costly, risky litigation without any real potential to recover additional sums. Plaintiffs' Counsel likewise believe the resolution is fair and reasonable taking into account the risks, burdens of proof and the records produced to date. Plaintiffs also carry the risk of having to pay Defendant's cost and expenses if they did not prevail - risks Plaintiffs naturally wish to mitigate and avoid.

### D.  The Stage Of Proceedings At Which The Settlement Was Achieved.

The Parties reached settlement after more than nine months of intense litigation. Counsel for the Parties spent significant time and effort advocating legal theories, exchanging discovery

and modeling the potential damages at issue in this case. The Parties exchanged documents, damage calculations, compensation information, and engaged in detailed evaluation of Partsbase's compensation practices for Plaintiffs.

There has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The Parties exchanged records, information, data and representations regarding the claims and defenses in this matter. In agreeing upon the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

### E. The Likelihood of Success at Trial.

Plaintiffs were employed as sales representatives. The core *bona fide* FLSA disputes in this case relate to whether Plaintiffs were required and/or permitted to work off-the-clock without proper and adequate overtime compensation; whether any or to what extent any overtime pay is due; whether liquidated damages are appropriate; whether a two or three-year statute of limitations would be applicable, along with whether Defendant's Section 207i retail exemption would be applicable.

The Plaintiffs would face significant obstacles and risk an unsuccessful outcome if this case were to proceed to trial. First, Plaintiffs would face a risk at trial of not prevailing on their wage claims because they would have had to establish that they in fact worked off-the-clock without adequate overtime compensation. At trial, Partsbase would have claimed (i) Partbase has an express policy forbidding ISR from working off-the-clock; (ii) Partbase implemented safeguards to prevent ISRs from working off-the-clock; (iii) Partbase required the Plaintiffs to sign documents and go on camera and disclaim they were owed any overtime wages (iv) Partsbase enacted and enforced policies sufficient to show that it acted in both objective and subjective good

17

faith such that a two-year statute of limitations should apply and that liquidated damages are not appropriate in this instance.

If the case were tried, the jury would have been presented with a case where Partsbase would have argued that it maintained compliance with the FLSA, and Plaintiffs would bear the burden of proving that they worked off-the-clock with Partbase's knowledge and/or tacit permission of management.

Second, Plaintiffs would have had to establish the number of hours they worked off-the-clock. In the damage analysis conducted by Plaintiffs' counsel, each Plaintiff is credited with being paid many hours of unpaid overtime wages during weeks they worked a full 40 hours, and were neither paid any overtime wages. Plaintiffs then discounted the wages at issue by factoring in the risks of the Defendant's arguments and evidence to be presented at trial, to come upon with discounted damage analysis, including the reduction of work weeks beyond the 2 year SOL for each Plaintiff. If the case were tried, Partsbase would have the opportunity to establish that the number of hours worked per week was less than the Plaintiff's approximated hours, which could have substantially reduced Plaintiffs' damages. Furthermore, if Defendant's prevailed on their good faith defense, liquidated damages would not be awarded, and similarly, all wages older than 2 years would be time barred.

Despite diligent investigation and research, it remains a highly uncertain question of fact of how many actual overtime hours each Plaintiff worked off-the-clock, and whether or not a two or three-year statute of limitations is applicable and whether or not liquidated damages are appropriate in this matter. In consideration of the close factual issues raised, and the significant costs of litigation required to build a litigation record sufficient to prove the claims or defenses,

the Parties reasonably chose to compromise the bona fide dispute.   Martin and Levinson have always sought a compromise of the claims, and when such an opportunity arose, they chose to pursue resolution and compromise.  It would seem to be illogical to force a plaintiff to risks all the way to trial, gambling on whether a jury would agree with him and the other plaintiffs on their alleged unpaid work hours, while also carrying the risk of having to pay Defendant, thousands of dollars in costs and expenses if they did not prevail on their claims.

There is in this case, like most disputed claims and lawsuits, the possibility that Plaintiffs would recover $0, and worse have to pay the other side thousands of dollars in litigation costs. Ultimately, the Parties agreed to an amount of $81,100.00 representing a reasonable compromise of all the Plaintiffs' overtime wage claims in which each person on average is paid $2,300.00 in wages. These payments represent about .912 unpaid overtime hours per work week plus an equal sum in for liquidated damages, for each Plaintiff.

**F.  The Court Should Approve the Negotiated and Stipulated Sum Defendants agreed to pay to Plaintiffs for reimbursement of Their Attorneys' Fees and Costs Incurred in this action, Pursuant to the Settlement Agreement.**

 The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorney's fees.  *See Helms v. Central Fla. Reg. Hosp.*, 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998).  Provided "the plaintiff's attorneys' fee is agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court [should] approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

In this case, the Settlement Agreement provides for the Defendants to pay Plaintiffs, attorneys' fees and costs as part of the resolution of Plaintiffs' claims in the amount of $265,000.00 in fees and costs, which includes including $15,000.00 in taxable costs consisting of filing fees, court reporter charges and expert witness charges plaintiff's counsel incurred.

Plaintiffs' attorneys' fees and costs to be paid by the Defendant was separately negotiated from the sums agreed to be paid for the wage claims of each Plaintiff. Moreover, Plaintiffs' attorneys incurred substantially higher sums in fees, (lodestars) and through separate negotiations with Defendants', the Parties reached a compromise as to the sum of attorneys' fees and costs to be paid by the Defendants without regard to the amount paid to Plaintiffs. *See* Exhibits 5 - Declaration of Mitchell L. Feldman and Exhibit 6 - Declaration of Benjamin Lee Williams.

The Parties stipulated that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances. Further, the sum agreed upon is a substantial voluntary reduction in the amount of fees incurred by Plaintiffs' attorneys, which Plaintiffs could have sought the Court to determine a reasonable fee and which could have awarded a substantially higher sum. Over the past 9 months of litigation, Plaintiffs' counsel spent a significant amount of time in the case preparing the pleadings, reviewing documents, preparing damages models, analyzing records, researching applicable issues, engaging in formal and informal discovery, and attending multiple hearings and depositions; and ultimately engaging in a two-week mediation with Defendant's counsel that ultimately resulted in this settlement.

Further, at every step of the litigation, Plaintiffs' counsel was required to communicate with numerous Plaintiffs further increasing the number of hours expended in this matter. Plaintiffs' Counsel reviewed and reconciled over 20,000 pages of documents and records to create

a monumental damages model. Ultimately, Plaintiffs' damages model of showing the time records and time-edit records when compared to the time-stamped email, telephone and CRM records resulted in the settlement that compensates each Plaintiff for the amount of unpaid wages due and owing to them an equal amount of liquidated damages.

Plaintiffs' counsel spent substantially more hours than the attorneys' fees reflect litigating this matter from inception through filing this Motion for Approval of Settlement. Plaintiffs' counsel also spent and incurred approximately $15,000.00 in costs associated with this litigation. During settlement negotiations, the Parties separately negotiated attorneys' fees and costs without regard to the amount owed to Plaintiffs. Ultimately, the Parties agreed to the payment of $250,000.00 in attorneys' fees and $15,000 in costs to be paid by Defendants to resolve the prevailing Plaintiffs' claim for attorneys' fees and costs. Based upon Plaintiffs' counsel's hourly rates as awarded in other FLSA actions, and the reasonable rates for similarly experienced attorneys in FLSA collective actions in this district, an hourly rate of $425.00 per hour is within the reasonable range for Attorneys Feldman and Williams in this case, and $300.00 for associate attorney Quintus. Moreover, the number of hours spent litigating this matter, the payment of attorneys' fees and costs of $265,000 is fair and reasonable under the circumstances, and averages to just $6,410.00 per each of the current 39 Plaintiffs in this action. Further, the fact that Plaintiffs' counsel agreed to a reduced attorneys' fee provision demonstrates that no conflict of interest adversely affected the Plaintiffs' recovery under the Settlement Agreements.

Further Plaintiffs' counsel's attorneys' fees and costs are reasonable in light of the fact that the total of $81,100.00 for wages in settlement of Plaintiffs' claims were obtained in spite of

Defendants' vigorous defenses that Plaintiffs' did not work off-the-clock, that Plaintiffs were expressly forbidden from working off-the-clock, and Defendants' asserted exemption defenses.

This settlement was achieved only by and through Plaintiffs' counsel's ability to persuade Defendants that Plaintiffs' claims had merit and that Defendants faced the very real risks of having to pay more than this sum in wages, as well as incurring attorney's fees which already eclipsed the entire amount of the settlement if they continued to litigate. This case settled after 9 months of litigation. Thus, it is appropriate that Plaintiffs' counsel be fairly and reasonably compensated for performing these necessary legal services. Defendants stipulate that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances, and Plaintiffs have also agreed to accept the reduced amount of attorneys' fees from their respective lodestars for the purpose of ending this litigation and obtaining a settlement that Plaintiffs Martin and Levinson Sullivan desired in lieu of the continued risks of trial, including the risks of having to pay the Defendant's litigation costs.

All of the above factors warrant that the $265,000.00 stipulated to be paid to Plaintiffs' counsel for reimbursement of incurred attorneys' fees and costs are fair and reasonable under all the facts and circumstances, and as to which the Court should approve. This compromised sum moreover is fair on its face given all the above information.

## CONCLUSION

The Parties voluntarily agreed to the terms of their settlement. All Parties were counseled and represented by their respective experienced attorneys throughout the litigation and settlement process. Accordingly, the Parties jointly and respectfully request that this Court approve the terms of the Settlement Agreement, enter a stipulated judgment in favor of the Plaintiffs in the amounts

agreed upon, including the amount agreed to be paid in attorney's fees and costs, reserve jurisdiction to enforce the terms of this FLSA settlement agreement for a period of 60 days, and then dismiss this case with prejudice upon compliance by Defendants with the payment of the sum agreed upon.

Dated: January 11, 2021.

Respectfully Submitted this 19th day of January 2021

**FELDMAN LEGAL GROUP**

s/*Mitchell Feldman*
Mitchell Feldman, Esq.
Florida Bar No. 0080349
mlf@feldmanlegal.us
Ben
Florida Bar No. 0068573
ydave@sgrlaw.com
6940 W. Linebaugh Ave #101
Tampa, Florida 33625
Telephone: (813) 639-9366
Facsimile: (813) 639 -9376
**Attorney for Plaintiffs**

**WILLIAMS LAW P.A.**

/s/ Benjamin L. Williams
Benjamin Lee Williams, Esq.
FL Bar No: 0030657
P.O. Box 3237
Ponte Vedra Beach, FL 32004
(t) (904) 580-6060
(f) (904) 671-9483
bwilliams@williamslawjax.com
**Co-Attorney for Plaintiffs**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 19th day of January, 2021 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send an e-mail notification of such filing to counsel of record for all parties.

*/s/ Benjamin L. Williams*
Benjamin L. Williams, Esq.
Florida Bar No. 0030657